## Case No. 8,584.

### LOWRY v. WEAVER et al.

[4 McLean, 82.] [1]

Circuit Court, D. Indiana. May Term, 1846.

INDIANS — RESPONSIBILITY TO STATE LAW — RESERVED LANDS—SALE UNDER STATE LAW FOR DEBT.

1. Indians living within a state, and doing business as merchants, are responsible by the laws of the state, for the payment of their debts. This presupposes that they are not considered under the laws of the United States.

2. Lands reserved to them under a treaty, which vests in them the title, but which restricts them from conveying it, except with the consent of the president of the United States, descend under the laws of the state, and may be made responsible for the payment of debts.

[Cited in Love v. Pamplin, 21 Fed. 761.]

[Followed in Blue-Jacket v. Commissioners of Johnson Co., 3 Kan. 355, 364. Cited in brief in Pickering v. Lomax, 120 Ill. 290, 11 N. E. 175.]

3. The reservation as to the conveyance is personal, but such lands are subject to the operation of the state law.

[Distinguished in Wau-ke-man-qua v. Aldrich, 28 Fed. 497.]

[Cited in Taylor v. Vandegrift, 126 Ind. 328, 25 N. E. 549; Board of Commissioners of Allen Co. v. Simons, 129 Ind. 199, 28 N. E. 420.]

4. The law, thus substituting an agency, conveys the title without the sanction of the president.

5. This court will recognize the procedure of a court of probate, through which Indian lands have been thus sold, where the court had jurisdiction, and the proceedings upon their face appear to have been regular.

In equity.

Mr. Smith, for complainant.

OPINION OF THE COURT. This is a bill in chancery. Previous to the 17th of August, 1817, John W. Burnet and the complainant were partners in merchandizing, and on that day they settled their accounts, and a balance was found due by Burnet of two thousand four hundred seventy-nine dollars and ninety-four cents, for which he gave his note to the complainant. By the treaty of St. Mary's, in 1818, two sections of land on Flint river, near the Wabash, in Tippecanoe county, were granted to Burnet. As usual in Indian treaties, there was a provision that this grant to Burnet and his heirs, should never be conveyed without the consent of the president of the United States. In the year 1826 Burnet died, not having paid [Fielding] Lowry any part of his debt, or conveyed any part of his land. He left certain brothers as his heirs, but at the time of filing this bill the only surviving heirs were, William Davis and Richard Davis, the latter a minor, citizens of Indiana, and Mary Burnet and Francis F. Palms, citizens of Michigan, who are not made parties to this suit. Administration of the estate of John W. Burnet was granted in the year 1831, by the probate court of Tippecanoe county, to Peter Weaver, who gave bonds and entered upon the trust. On the 7th of January, 1832, Lowry filed the note of Burnet in the probate court, with the assent of [Peter] Weaver, the administrator, there being no presumption of payment, and there being no personal assets to pay the note. The administrator filed his petition to the court, for an order to sell seven hundred and sixty-eight acres of the land granted to Burnet and his heirs by the treaty, it being one entire section, and the remainder of the other section, after a sale made by Tipton, after the death of Burnet, as agent of one of his heirs, to the said Peter Weaver, to satisfy the debts of the estate, including the debt due to the complainant.

Upon the filing of the petition, the probate court made an order of publication against the non-resident heirs, and the resident heirs appeared by their guardian ad litem, and at the next term, proof of publication being duly made agreeably to law, the note of the complainant, though not objected to and admitted by the administrator, was proved as to the confessions of one of the heirs, a regular default was taken as to the non-resident heirs, and an order was made that the land named in the petition and described in the bill, should be sold by the administrator, and the sale was made by the administrator in due form to Lowry, the complainant, for one thousand three hundred eighty-eight dollars and eighty cents, being the full value thereof; and the probate court, on a return of the sale, confirmed it, and ordered the conveyance to be made to Lowry, which was done, and a credit was entered on the note, for the sum for which the land was sold. After the purchase and receipt of the deed, Lowry applied to the president of the United States to obtain his approval of the conveyance, which was refused, because a partition of the estate of Burnet had been previously made, and the land in question had been set apart to Rebecca Burnet, one of the heirs, who had sold it in trust to Francis Palms, who claimed title; the department submitting it to the courts to say, in whom was vested the legal title, and to whom a patent should issue. On the 30th of July, 1832, Lowry sold to Peter Weaver, the administrator, the one hundred and twenty-eight acres, a part of the second section, for the sum of six hundred and forty dollars, and gave a bond for a title on or before the 1st of January, 1834, provided the deed to Lowry should be approved by the president, or so soon as the purchase money should be paid. Weaver paid one hundred seventy-one dollars and seventy-six cents of the purchase money, entered into the possession of the land, and has ever since occupied it. Long since, Lowry tendered to Weaver a general warranty deed for the land, and demanded pay-

[1] [Reported by Hon. John McLean, Circuit Justice.]

ment of the balance of the purchase money; which being refused, he offered to rescind the contract, and pay back the purchase money which he had received, but Weaver refused. And the bill avers that the balance of six hundred and forty dollars, with the interest, deducting the sum paid, is still due. The residue of the section of which Burnet died seised, is held by Weaver, who has refused to act as administrator, in subjecting it to sale, for the residue of the complainant's demand, alleging that he claims it by purchase.

The object of the bill is: (1) To compel the administration of the residue of the land of which John W. Burnet died seised, which was not administered by Weaver, and which he claims as a purchaser. (2) To compel Weaver to receive the deed tendered for the one hundred and twenty-eight acres, and to pay the residue of the purchase money. (3) To compel Weaver to discover the assets of the estate. Weaver has answered, substantially admitting the facts stated, and one of the defendants, William Davis, who has come of age since the filing of the bill, and who had answered by his guardian, has filed a plea of the statute of limitations; the other infant defendant has answered by guardian ad litem.

The great question in the case is, whether the real estate in question was liable for the payment of the debts of Burnet; and was subject to be made assets, by the administrator, under the laws of Indiana. It has been the policy of the government in making grants to Indians, sometimes called reserves, specially to provide in the treaty, as in the case before us, that the conveyance by the Indian should be made only by the sanction of the president. This was intended to protect the Indian right, he being, from his untutored condition, incapable of guarding his interests against the impositions and frauds of his white neighbors. This was a wise policy, but, it is believed, that it has fallen short of that protection which it was intended to afford. Such are the devices of dishonest men, that the utmost vigilance cannot detect and redress, all the mischievous tendencies of their acts. And this is especially the case when they are brought in contact with the uncivilized Indians. But the deed in question does not come within the provisions of the treaty. The grantee, and, perhaps his heirs, may not be able to make a valid conveyance of the land without the approval of the president. That may be considered a condition within the original grant, and is limited to the personal acts of the grantee and his heirs. But the conveyance under consideration is by operation of law. The land is not withdrawn from the sovereign action of the state. Like other lands, it may be taxed by the state, and is subject by the local law to the payment of debts. This belongs peculiarly to state power. It regulates the transmission of real estate by deed or by operation of law, and subjects it, in the mode prescribed, to the payment of debts. Except by compact, or the voluntary legislative action of the state, lands within its limits can not be withdrawn from its ordinary action.

For the payment of debts, the law provides a mode by which the lands of infants, who are incompetent to make a contract, may be sold. And no reason is perceived why the same rule should not apply in the case under consideration. It is a general principle, that the property, both real and personal, of persons capable of contracting debts, may be made liable for the payment of debts. The property gives them credit, and in sound policy and justice, it should be held responsible for their debts. The grantee of the government in this case was capable of making contracts, and was legally responsible under them. And although by the restrictions of the grant he could not alien, yet, there would seem to be no inconsistency in saying, that the state law may substitute an agency through which the land may be reached by creditors. The genuineness of the claim against the estate of Burnet, seems to be well established. Is the claim barred by the statute of limitations? The counsel for the complainant in answer to this says, that the statute does not operate on promissory notes. Rev. St. 1831, p. 686, 711; [Rice v. Minnesota & N. W. R. Co.] 1 Black, [66 U. S.] 378.

The sanction given to the note by the probate court, where notice had been given to the parties interested, as the law requires, and also by the administrator, is satisfactory evidence not only to the hand-writing of the promisor, but to the justice of the consideration. The allegations of the plea are unsupported by an answer, and the facts and circumstances of the case rebut the presumption of payment. No irregularity is pointed out by the counsel, in the probate court. 8 Cowen, 350; 3 John. Ch. Rep. 384. And as that court had jurisdiction of the subject matter before it, the court must treat the proceeding, until reversed or set aside, as valid. If there were a defect of title, Weaver could not maintain the possession of the land purchased by him, and refuse to pay the consideration. He is bound to rescind the contract, receive the money back he has paid, and give up the land, or pay for it and receive the deed. Believing that the title is valid, the court will decree a specific execution of the contract. On the tender of a general warranty deed by the complainant, the defendant shall pay the balance of the consideration, and interest thereon. And as to the land purchased by Weaver, it must be considered as subject to the payment of the debts of the ancestor, Weaver having notice of all the facts.

The court will decree that the heirs before the court, who have a claim to the land purchased by Weaver, shall pay their respec-

tive proportions of the balance of the debt due to the complainant in ——— months; and in default thereof the interest in the lands of the heirs who are defendants, shall be sold, etc., and that the defendants shall pay the costs, etc.

LOYD (UNITED STATES v.). See Case No. 15,637.

LOYHED (PHELPS v.). See Case No. 11,077.

L. P. DAYTON, The. See Case No. 7,192.

L. P. SMITH, The. See Case No. 13,191.