Taylor, Administrator, *v.* Vandegrift, Administrator.

Filed Dec. 16, 1890.

---

126   325
129   199

No. 14,319.

## TAYLOR, ADMINISTRATOR, *v.* VANDEGRIFT, ADMINISTRATOR.

DESCENTS.—*Ma-to-sin-ia Indians.—Lands of.—How they Descend.—Sale of to Pay Debts.*—The real estate of a member of the Ma-to-sin-ia band of Indians, who died in 1880, having received title to his land under the act of Congress of 1872, did not descend to his heirs free from the demands of creditors. Said land, on proper petition, might be sold to pay the claim of a creditor of the decedent, whose claim did not belong to the class the payment of which said act of Congress expressly provided should never be enforced against the land to which the act referred.

From the Wabash Circuit Court.

*A. Taylor*, for appellant.

*C. Cowgill, H. B. Shively* and *C. E. Cowgill*, for appellee.

BERKSHIRE, C. J.—This was a proceeding instituted under section 2342, R. S. 1881, to compel the appellant to file his petition for the sale of certain real estate of which the decedent died the fee simple owner, for the payment of debts. The judgment of the court being adverse to the appellant he appeals.

It is not contended that the decedent did not own the real estate at the time of his death, but the contention is, that notwithstanding such ownership the real estate descended to the heirs of the decedent independent of the demands of creditors.

The decedent left no widow, him surviving, but left children, and the question is whether the children inherited the real estate free from the demands of creditors or subject thereto.

The decedent was an Indian, a member of the Miami tribe, and so far as we are informed had at all times resided in the State of Indiana. He was also a member of the band of Ma-to-sin-ia.

In the year 1838, a treaty was made by the United States Government through its commissioner, Abel C. Pepper, and the Miami tribe of Indians. See 7 U. S. Statutes at Large, p. 569. In this treaty, from the cession made to the Government, a certain tract of land, now in Wabash and Grant counties, is reserved to the said band of Ma-to-sin-ia. This treaty was not ratified by the United States Senate, and in the year 1840, a second treaty was made which was ratified. See 7 U. S. Statutes at Large, p. 582. In section 7 of the second treaty, it is stipulated that the United States shall convey by patent to Me-shing-go-me-sia, son of Ma-to-sin-ia, the tract of land reserved in the first treaty to the said Ma-to-sin-ia band. In the year 1872, Congress enacted a statute

authorizing the partition of the said real estate among the survivors of the said band, and the surviving descendants of members thereof *per capita*. 17 United States Statutes at Large, p. 213. In the act of Congress the band is called the Meshing-go-me-sia band, but there is no question as to its identity. The act provides that the partition shall be made under the supervision of the secretary of the interior, and that after partition has been made he shall issue to each person a patent conveying to him or her the land set apart to such person in fee simple. These provisions are followed with a proviso that the titles thus conveyed shall be subject to the laws of descent of the State of Indiana, and descend as other lands in that State descend. Then follows another section, wherein it is provided that said lands shall not in any time to come be subject to any debt contracted, the consideration of which passed in whole or in part prior to the date of said partition, nor subject to levy, sale, forfeiture or mortgage, nor to any lease for any longer period of time than three years prior to the 1st day of January, 1881, nor be disposed of, contracted, or sold by the owners thereof under said partition prior to said last named date. This section contains a proviso that the lands shall be subject to taxation as other property under the laws of the State of Indiana after said 1st day of January, 1881.

The decedent died in the year 1880, and on the 31st day of May of that year the appellant was appointed administrator of his estate.

On the 22d day of June, 1881, the appellee having theretofore filed his claim against the said appellant, the same was duly allowed on the appearance docket of the Wabash Circuit Court, that being the court where said estate was pending for settlement. Afterwards, and on the 30th day of September, 1886 (as we understand the record), the appellant filed his petition in this proceeding.

Whether, under the conditions as disclosed by the history of the negotiations between the national Government and

the band of Indians to which the appellant's decedent belonged, the limitations set forth in the act of Congress amounted to conditions subsequent as between the Government and the deceased, and whether it was within the power of Congress to exempt the real estate from State taxation, or from the laws of the State for the enforcement of judgments by levy and sale on execution, are questions that we are not called upon to consider.

The circumstances involved in the case of *Kansas Indians,* 5 Wall. 737, and other cases cited by counsel for the appellant, including our own case of *Me-shing-go-me-sia* v. *State,* 36 Ind. 310, are very different from the facts of this case. The act of Congress of 1872, as will be remembered from what we have already stated as to its provisions, entirely changed the status of the persons to whom it related, as well as their relation to the real estate reserved to them. From common occupants of the entire reservation, as a band or tribe, and without title from the Government, each became a fee simple owner in severalty of the part assigned to him or her. The facts of this case are much like the facts in the case of *Lowry* v. *Weaver,* 4 McLean, 82, wherein it was held that land granted to John W. Burnet by the treaty of St. Mary's in 1818, it being two sections of land on Flint river, near the Wabash, in Tippecanoe county, was subject to taxation by the State, and subject to the mode prescribed by State laws for the payment of debts.

It may be as well to state here as any where that the appellee's claim does not belong to the class for the payment of which the act of Congress expressly provided should never be enforced against the land to which the act referred. That the estate of the decedent was subject to administration under the laws of the State is not questioned.

As has already been stated, the act of Congress providing for the partition of said real estate, and the execution of patents conveying the fee, expressly provides that the portion conveyed to each person shall descend according to the

Taylor, Administrator, *v.* Vandegrift, Administrator.

laws of the State of Indiana, in the same manner that other lands descend under said laws. How do other lands descend? When there are no other heirs but children, in equal proportions. Section 2467, R. S. 1881. The real estate of the decedent descended to his children in equal proportions. But it descended to them subject to the demands of creditors.

Section 2332 provides that if the personal estate of a decedent shall be insufficient for the payment of the liabilities thereof, the real estate, if any, of the decedent, shall be sold to make assets for the payment of such liabilities.

Section 2333, reads thus: " The real estate liable to be sold for the payment of debts, when the personal estate shall be insufficient therefor, shall include:

" *First.* All the real estate held or possessed by the deceased at the time of his death by legal or equitable title (except such as was held upon a contract for the purchase of land), *and all interest in real estate which would descend to his heirs."* (The italics are our own).

" *Second.* All school or other lands held on a certificate of purchase of the general Government or the State of Indiana."

There is a third clase, which relates to land conveyed to defraud creditors, and is not material to this case.

Sections 2442, 2443, 2444, 2445, 2446, and 2447, provide for the liability of heirs and devisees, receiving personal and real property belonging to the estate of the deceased debtors, upon conditions, after final settlement; and section 2444 creates a first lien in favor of the creditor on real estate held by the heir, or devisee, or a purchaser therefrom with notice.

And this court has held frequently, in effect, that the creditor of a deceased debtor holds a lien upon the real estate of which the debtor died the owner, even as against an innocent purchaser for value from the heir or devisee. See *Kayser* v. *Hodopp,* 116 Ind. 428; *Scherer* v. *Ingerman,* 110 Ind. 428; *Miller* v. *Buell,* 92 Ind. 482; *Cole* v. *Lafontaine,*

84 Ind. 446; *Baker* v. *Griffitt*, 83 Ind. 411; *Moncrief* v. *Moncrief*, 73 Ind. 587.

It follows, therefore, as a logical conclusion, that the real estate of the decedent descended to his heirs, subject to the payment of the claim of the appellee, by the very terms of the act of Congress.

But if this were not so, suppose the appellant's intestate and the appellee's intestate had both been living, on the 1st day of January, 1881, and for a sufficient length of time thereafter to have enabled the latter to have sued the former, there was nothing in the act of Congress forbidding him from doing so ; and had he obtained judgment nothing in said act declaring that he should not have execution against his debtor's real estate.

The act does not provide that the real estate shall not be subjected to sale upon execution, or otherwise, after January 1, 1881, for debts contracted before that date, and after the real estate had been partitioned.

In fact, the inference that must be drawn from the language of the act of Congress is, that this might be done, else the prohibition would not have been confined to the debts antecedent to the partition.   And so it must be as to a sale made by the decedent's administrator.

Whether the present proceeding could have been maintained prior to the first day of January, 1881, is a question not before us.

We find no error in the record.

Judgment affirmed, with costs.

Filed Oct. 17, 1890; petition for a rehearing overruled Dec. 16, 1890.