STEVENSON *v*. CHRISTIE.

Opinion delivered April 24, 1897.

JURISDICTION—CONTRACT WITH INDIAN.—A state court has jurisdiction to enforce a contract made in the Indian country with an Indian. (Page 75.)

SAME—VOID CONTRACT.—The fact that a contract might be shown to be void does not deprive the court of jurisdiction to try the question of its invalidity.  (Page 75.)

Appeal from Sebastian Circuit Court, Fort Smith District.

EDGAR E. BRYANT, Judge.

## STATEMENT BY THE COURT.

This action was commenced in a justice's court in Upper township, Sebastian county, on the 6th day of August, 1894, by the appellant filing in said court his account, affidavit and bond for attachment. Personal service was had on the defendant, and a writ of garnishment served on the First National Bank of Fort Smith.

On the return day of said summons, by consent, this cause was continued to the 22d day of August, 1894, and on that day defendant entered her appearance in this cause, and moved the court to dismiss this cause for want of jurisdiction, which motion was overruled, whereupon one Samuel Miller filed an interplea for the money attached in the First National Bank, and on motion of appellant (plaintiff) the case was continued to August 24, 1894, and on that day defendant (appellee) "confesses plaintiff's claim sued on herein," the record states. On the trial of the interplea, the justice decided against the interpleader, who does not seem to have appealed, but the record recites that an affidavit for an appeal was filed, and as Jennie Christie, the appellee, is the only defendant that figures in the circuit court, I conclude that she it was that appealed to the circuit court.

The First National Bank, garnishee, having answered that it was indebted to defendant, Jennie Christie, in the sum of $200, by order of the court said garnishee paid into court $137, the amount of appellant's judgment and the costs of the suit, which said amount was paid over to Jo. Johnson, plaintiff's attorney.

At the trial of this cause in the circuit court, it was submitted to the court, on defendant's motion, to dismiss for the want of jurisdiction, being the same motion that was overruled by the justice, and the case was submitted on an agreed statement of facts. The motion filed by defendant to dismiss was not copied into the record. When it came on to be heard the parties made the following agreement of facts: (1) The parties hereto are all residents of the Cherokee Nation, Indian Territory. The debt sued on was contracted there, and was payable there. (2) The plaintiff, Stevenson, was a white man

and citizen of the United States, married to a Cherokee woman, and is a merchant carrying on a mercantile business in the said Indian Territory. His marriage was solemnized in the city of Fort Smith, under license issued there. Immediately after said marriage he and his wife took up their residence in the Indian Territory. (3) Defendants are Cherokee Indians by blood. (4) The Cherokee Indian law regarding marriage is set out, which shows that a non-citizen marrying into the Cherokee Nation, as provided in that law, became a Cherokee Indian. (5) Page 8 says there is no Cherokee law authorizing a non-citizen to do business in the Cherokee Nation.

The circuit court sustained the motion to dismiss on the ground that, under a certain treaty between the United States and Cherokee Indians, the United States court in the Indian Territory was the proper and only place for plaintiff and defendant to litigate their cause of action, and dismissed the case, and rendered judgment against plaintiff and his bondsmen for $137, to which proper exceptions were at the time taken.

The grounds of motion for a new trial are: (1) The court erred in sustaining defendant's motion to dismiss for jurisdiction. (2) The court erred in its declaration of law. (3) The court erred in refusing to find for plaintiff. (4) The court erred in rendering judgment against plaintiff. (5) The court erred in finding for defendant. (6) The court erred in rendering judgment for defendant. (7) The court erred in rendering any judgment whatever, beyond simply and only passing on defendant's motion to dismiss. (8) The court erred in ordering the First National Bank garnisheed to pay and to return to defendant, Jennie Christie, the money still held by said bank as garnishee.

*T. W. M. Boone*, for appellant.

The circuit court had jurisdiction, and erred in dismissing the action. Art. 13, Treaty U. S. with Cherokee Nation, July 19, 1866, Revision Ind. Treaties, p. 91; sec. 5, Ch. 333, p. 671, vol. 1 (2 Ed.) Supp. Rev. St. U. S. 1897–1891; Sand. & H. Dig., § 5874; 1 Black, Judgm. § 77.

*Thos. E. Ward,* for appellee.

The courts of this state have no jurisdiction to enforce a contract made in the Indian country with an Indian. 17 Ark. 43; 21 *id.* 106; 21 *id.* 485; 23 *id*; 77. The Territorial courts have exclusive jurisdiction. See Acts Cong. March 1, 1889, § 5, as amended by Act May 2, 1890, § 29, etc. The cause was properly dismissed. 14 U. S. St. at Large, p. 800; 25 Pac. Rep. 872; 11 U. S. Ct. App. 468.

HUGHES, J., (after stating the facts.) The court had jurisdiction of the subject matter, the contract in this case, and obtained jurisdiction of the person of the appellee by service of summons and by her appearance to the action.

Counsel contend that the contract, being one that had been made with an Indian in the Indian Territory by one who was not an Indian, was void, and that therefore the court had no jurisdiction. The fact that the contract might have been shown to be void did not deprive the court of jurisdiction to try the question of its validity. Jurisdiction is the power to hear and determine a cause. *United States* v. *Arredondo,* 6 Peters, 709; Brown, Jurisdiction, § 1, pp. 2 and 3. "There are three indispensable requisites touching the exercise of jurisdiction that must always exist. Judge Story defines them by saying that the court pronouncing judgment should have lawful jurisdiction over the cause (by which he means the subject-matter), over the thing in dispute and over the parties." Brown, Jurisdiction § 1, pp. 3, 4 and cases, note 1. "Jurisdiction over the subject-matter is the right of the court to exercise judicial power over that class of cases." Brown, Jurisdiction, § 1*a*, p. 4.

The opinion of a majority of the court is that the case was one within the jurisdiction of the magistrate, and of the circuit court, and that the circuit court erred in dismissing it for the want of jurisdiction.

Reversed and remanded, with directions to the circuit court to overrule the motion to dismiss, and to proceed to try the cause.

(October 30, 1897.)

BUNN, C. J., (dissenting.) There are two principal questions in this case. One is, was the account sued on void by

reason of the political status of any of the parties thereto, or of all of them, the one to the other?

The other question is, granting that the contract (the account) was and is valid, had the state court jurisdiction to hear and determine the controversy over the same between the parties, sustaining the relations they did to the state and the Indian Territory?

It is admitted that Stevenson was married to an Indian woman, and was residing and doing a mercantile business in the Cherokee country, but it is also shown that he was married in the State of Arkansas, and according to the laws of Arkansas, which are materially different as to formality and ceremony from the tribal laws of the Indians, where a marriage is not regarded generally as legal unless in substantial conformity therewith.

I am in doubt on this question, from the limited examination I have been enabled to make of authorities on the subject. But it may be that a marriage between a white man and citizen of the United States or one of the states, since it is not void as an establishment of the marital relation between them, is not void in the sense of establishing the relation of tribal adoption into the Cherokee nation, but is only voidable at most. If that be true, according to the treaty stipulations between the United States and these Indians, the account would be lawful, if correct and just, but was only the subject of litigation in the tribal or Indian Territorial courts.

If, however, the marriage of Stevenson was not so far lawful, in the purview of the Indian laws, as to effect his adoption into the tribe, in other words, was not such as authorized him to do business among the tribe (for none but an Indian by birth or adoption can there lawfully transact business), then the contract would be one between a citizen of the United States and an Indian, and would be void as part of a regular course of transacting business, if not in every sense; but if valid according to said treaty stipulations, only the nearest United States court in the territory, or nearest thereto, would have jurisdiction to adjust the same. At all events, the jurisdiction would be as fixed in these treaty stipulations; for, according to the doctrine laid down in *Cherokee Nation* v. *Georgia,* 5 Peters, 1, it is held

that the United States have exclusive right and power to make laws for the government of the Indians, subject to the rights of the Indians to make them within certain limits.

Upon the whole, I am inclined to think that, without objection on the part of the tribal government, the marriage of Stevenson was so far a valid marriage as to effect his adoption as an Indian, and authorized him to do business in the Cherokee Nation, and that the contract of sale and purchase of the merchandise constituting the account and made in the Indian Territory was valid as a purely Indian contract; and, in addition to what has been said, both parties might be estopped from contending otherwise as to that. However, that depends much upon the language of their marriage laws, of course.

Assuming, then, that the contract either is a purely Indian contract, or a contract between a citizen of the United States and an Indian resident in the Cherokee Nation, our next inquiry is, had the state courts in either case jurisdiction of the subject-matter and of the parties to this action?

Where an Indian had left the reservation, and started to go to Washington City without leave, and was arrested by an Indian commissioner's agent in the State of Kansas, and maltreated by him, in an action for assault and battery and false imprisonment in the state court, it was held, in effect, that the state court had jurisdiction to afford the plaintiff (the Indian) the relief sought. *Wiley* v. *Keokuk*, 6 Kas. 92.

In *Wiley* v. *Man-a-To-Wah* (another Indian), 6 Kas. 111, the same principle governed, and a like result followed.

No one, so far as I can find, ever denied the jurisdiction of the state courts to enforce their own criminal laws against any and all persons, irrespective of their nationalities and relations to the state; to punish such persons for violation of its laws, or for criminal violation of the personal rights of any and all persons therein being. The United States, with all their rights of supremacy over the Indians, and their exclusive right to regulate the intercourse of Indians with other people, have never, so far as I can find, gone to the extent of interfering with the police powers of the states, either to punish an infrac-

tion of their criminal laws, or to extend their protection over the injured, whoever he may be.

Where an Indian leaves his reservation, and abandons his tribal relation, and takes up his residence in a state, and carries on business there, he becomes both subject to the civil laws of that state, and the object of their protection as to their civil rights. *Lowry* v. *Weaver*, 4 McLean, 82; *Clark* v. *Crosland*, 17 Ark. 43. And so, according to the decision of this court in *Hicks* v. *Ewhartonah*, 21 Ark. 109, an executory contract made between a white man and an Indian within this state is enforcible in the courts of this state, for the reason that Congress cannot interfere with a contract made within a sovereign state.

When it is said that Indians are subject to the criminal laws of the state in which they may be, and also the civil laws thereof when doing business therein, about all is said that can be said as to the jurisdiction of the state courts over Indians and their affairs.

Prof. Thayer, in 1 Harvard Law Review, page 149, has attempted to show that Indians are included within the terms and protection of the 14th amendment to the Constitution of the United States; but the able article of the learned author can at least only be regarded as maintaining a doctrine that both he and a great many intelligent people think ought to be the law, but, as a legal proposition, his argument is met and rebutted by the very authorities he cites, namely, *Elk* v. *Wilkins*, 112 U. S. 94; also *U. S.* v. *Kazama*, 118 U. S. 375.

In *Cherokee Nation* v. *Georgia*, 5 Peters, *supra*, Chief Justice Marshall, in the course of the opinion of the court, delivered by him, said: "These Indians are the wards of the nation. They are communities dependent on the United States; dependent largely for their daily food, dependent for their political rights. They owe no allegiance to the states, and receive from them no protection. Because of the local ill-feeling, the people of the states where they are found are often their deadliest enemies. From their very weakness and helplessness, so largely due to the course of dealing of the federal government with them, and the treaties in which it has been

promised, there arises the duty of protecting, and with it the power."

Under the habeas corpus act, an Indian is held to be a "person," within the meaning of the act, in *U. S.* v. *Cook*, 5 Dill. (U. S.), 453; but in *Elk* v. *Wilkins, supra,* he is held not to be a "citizen," within the meaning of the 14th and 15th amendments to the constitution of the United States.

The case at bar is reversed because (as we understand it) the state court had jurisdiction of the subject-matter (meaning, of a contract in which a stated amount was involved, which is within the jurisdiction of the justice of the peace, according to the laws of the state); and thus, once having jurisdiction, it cannot be said to be without jurisdiction. Nor is there a want of jurisdiction, because it turns out that the contract is void. Certainly not, as stated in the last proposition, because the right to ascertain a contract to be void is but the right to take jurisdiction of it. But, if, as in this case, it develops that the state court is without jurisdiction because of the peculiar character, relation or status of the parties, or any of them, it would withhold all action, and that would be for want of jurisdiction, whether we call it of the subject-matter or of the parties.

It must be borne in mind that appellee was still an Indian, —still sustained her tribal relation, transacted no business in the state, except to deposit her earnings in a Fort Smith bank, and had done nothing to make her case different from that of any other Indian sustaining purely tribal relations.

It is claimed that she had entered her appearance in the justice's court. From the language of the record, fairly construed, we think her appearance was only to plead that she was an Indian, and resided in the Nation, and that her contract was not the subject of litigation in the state courts.

We think the state courts were without jurisdiction to hear and determine the matter between these parties, and that the judgment should have been affirmed.

WOOD, J., concurs.