## UNITED STATES v. KIYA.

### (District Court, D. North Dakota. November 20, 1903.)

**1. INDIANS—PUBLIC LANDS—ALLOTTEES—STATE LAWS—APPLICATION.**

Act Cong. Feb. 8, 1887 (24 Stat. 389), provides for the allotment of lands in severalty to Indians residing on Indian reservations, the title to be held in trust by the government for 25 years or longer, and at the expiration of such period an absolute title vests in the allottee; and sec-

tion 6 declares that on the completion of the allotments each allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which he may reside. *Held,* that after public land had been allotted to an Indian under such act he was not subject to prosecution for violating Act Cong. Jan. 15, 1897, c. 29, 29 Stat. 487 [U. S. Comp. St. 1901, p. 3620], prohibiting the commission of rape within the limits of an Indian reservation, but which contained no express provision that it should be applicable to Indians residing on allotted lands, but was subject to the laws of the state in which the crime was alleged to have been committed.

P. Rourke and Edward Engerud, for plaintiff.
A. T. Cole, for defendant.

AMIDON, District Judge. The indictment in this action charges the defendant with having committed, upon the Devils Lake Indian Reservation, the crime of rape upon the person of an Indian girl residing upon said reservation. It appears from the plea interposed by the defendant to the indictment, and the answer thereto, that both the defendant and the Indian girl upon whose person the crime is charged to have been committed are full-blood Indians, residing upon the Devils Lake Indian Reservation, under the charge of F. O. Getchell, the Indian agent of said reservation, and that neither of them has severed the tribal relations. It further appears in like manner that they were at the time the offense is charged to have been committed, and have been since the year 1893, residing upon lands allotted to each of them under and by virtue of the act of Congress approved February 8, 1887 (24 Stat. 388, c. 119), entitled "An act to provide for the allotment .of lands in severalty to Indians," etc. It also appears in the pleadings that the defendant has been regularly held and bound over to appear and answer in the district court of the county of Ramsey and state of North Dakota at the November term, 1903, for the same offense which is charged in the indictment in this action.

Upon the foregoing facts, it is claimed by the defendant that he has not committed any offense against the laws of the United States, but that the acts charged, if the same were committed, are a violation of the laws of the state of North Dakota only; and, second, that this court has no jurisdiction to try the defendant for said offense, but that he is subject solely to the jurisdiction of the state courts.

The proper disposition of the questions thus raised involves a construction of the act of February 8, 1887, above referred to. This act provides, in substance, for an allotment of lands in severalty to Indians residing upon Indian reservations, the title to such lands to be held in trust by the government for a term of 25 years, or such longer period as the president of the United States may deem best, and at the expiration of such period an absolute title to pass to the allottee. Section 5 (24 Stat. 389) provides that as soon as the allotments have been made and approved a patent shall issue in the name of the allottee, which shall declare that the United States will hold the land that is allotted for the period of 25 years in trust for the sole use and benefit of the Indian to whom such allotment shall be made. It further provides that at the expiration of this period, or

such extension thereof as the President shall deem for the best interest of the Indian, an absolute conveyance by patent shall be made by the government to the allottee. Section 6 of the act contains the following language: "That upon the completion of such allotments and the patenting of the lands to said allottees, each and every member of the respective bands or tribes of Indians to whom allotments have been made shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which they may reside." Under this provision it is urged by the defendant that he is subject, for the offense charged in the indictment, solely to the laws and courts of the state of North Dakota. Counsel for the government contends that until the final patent is issued the Indians are under the federal law.

After a somewhat careful consideration of the statutes, I am led to the conclusion that the "patenting" referred to in section 6, above quoted, is the preliminary patent that is issued as soon as the allotment is made. The debates in Congress while this statute was pending leave no doubt that it was the purpose of Congress to try the experiment of placing the Indians, as far as possible, in the same situation as other residents of the communities in which they lived, compelling them to live upon their lands, and by industry support themselves therefrom, and subjecting them to the laws of the local community of their residence. It was hoped that in this way the Indian would be led out from the habits of indolence and shiftlessness, which had characterized his life while residing upon reservations and supported by the government, into a life of self-supporting industry and law-abiding citizenship. The language that such Indians "should be subject to the laws, both civil and criminal, of the state or territory in which they may reside," is as plain and comprehensive as it could well be made. It could not have been the intention of Congress to render these Indians subject generally to the criminal laws both of the state and the nation. The language quoted plainly makes them amenable to the criminal laws of the state, and thereby removes them from the plane of national penal legislation, unless such legislation is by express provision in particular cases made applicable to them. It has been held by the Supreme Court of North Dakota that Indians in the situation of those referred to in this action are full citizens of the state, entitled not only to the protection of its laws, but to the exercise of the right of franchise, the same as white inhabitants. State v. Denoyer, 6 N. D. 586, 72 N. W. 1014. A similar holding has been made by the Circuit Court of Appeals of this circuit in respect to Indians residing in the state of South Dakota, where the local statutes and Constitution on the subject are the same as in this state. Farrell v. United States, 110 Fed. 942, 49 C. C. A. 183.

It is doubtless true that Congress might have conferred upon Indians residing upon allotted lands all the rights of citizenship, and yet reserved to Congress control over them as wards of the government. The question here, however, is not what Congress can do, but what it has done. It is noteworthy that in the act of January 30, 1897, c. 109 (29 Stat. 506) forbidding the sale of liquor to Indians

126 F.—56

or the introduction of liquor into the Indian country, the act is expressly made to include "any Indian to whom allotment of land has been made, while the title to the same shall be held in trust by the government," and the term "Indian country" is defined to include "any Indian allotment while the title to the same shall be held in trust by the government, or while the same shall remain inalienable by the allottee without the consent of the United States." These express provisions would seem to justify the construction that Congress was of the opinion that, had they been omitted, Indians residing upon allotted lands would not have been within the provisions of the act. The act of January 15, 1897, c. 29, 29 Stat. 487 [U. S. Comp. St. 1901, p. 3620], defining the crime of rape, contains no such direction. It is confined to Indians who shall commit the offense of rape "within the limits of any Indian reservation." There is no question that the offense charged in this action was in fact committed within the limits of an Indian reservation, for the simple allotment of lands in severalty does not abrogate the reservation. The Indians on the Devils Lake Indian Reservation are still under the wardship of an Indian agent, and Congress has since the allotment frequently recognized that reservation as still in existence as originally defined. It is the duty of the court, if possible, to so construe the act defining the crime of rape and the act of February 8, 1887, as to give effect to both statutes. This is done by construing the first statute as applying only to Indian reservations whose lands have not been allotted in severalty, leaving the act of February 8, 1887, to apply solely to reservations where such allotments have been made.

A full consideration of these statutes seems to lead to the conclusion that Indians in the state of North Dakota residing upon allotted lands are subject to the laws of the state, both civil and criminal, and that they are not subject to federal law except in the cases where Congress has so expressly provided, as in the statute dealing with the subject of intoxicating liquors. The plea will therefore be sustained, and the defendant discharged.