## UNITED STATES v. LEWIS et al.

(District Court, S. D. California, N. D.    July 10, 1918.)

### No. 118.

INDIANS ⬤⟶38(2)—PROSECUTION—JURISDICTION—FEDERAL COURTS—"RESERVED FOR EXCLUSIVE USE OF UNITED STATES."

A homestead acquired by an Indian on public land in a state under the general homestead law is not land "reserved * * * for the exclusive use of the United States," within Criminal Code, § 272, subd. 3 (Comp. St. 1916, § 10445), and a federal court is without jurisdiction to try a criminal offense committed thereon.

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Criminal prosecution by the United States against Sarah Lewis, Roy Lewis, and Louis Valencia. On demurrer to indictment. Demurrer sustained.

Lyle W. Rucker, Asst. U. S. Atty., of Los Angeles, Cal.

George G. Graham, of Fresno, Cal., and Edward Schary, for defendants.

TRIPPET, District Judge. The defendants have been indicted for murder. The case is before the court on a demurrer to the indictment. The defendants raise the question that the court has no jurisdiction to punish for the offense charged in the indictment. The jurisdictional facts charged in the indictment are as follows:

"That Sarah Lewis, an Indian woman, Roy Lewis, a minor Indian, both wards of the United States government, and Louis Valencia, * * * at, upon, and within the limits of an Indian homestead, formerly of the public domain of the United States, known as the Joe Dehy ranch, for which application was made on April 13, in the year of our Lord one thousand eight hundred and eighty-seven, by one Joe Dehy, a full-blood Piute Indian, and the father of Sarah Lewis and of Minnie Fuller, both Piute Indian women, and wards of the United States government, and for which a patent was granted May 5, in the year of our Lord one thousand eight hundred and ninety-three, which said patent contained a twenty-five year trust provision, as provided in the act of Congress of July 4, in the year of our Lord one thousand eight hundred and eighty-four, and amendments thereof, said Indian homestead entry being more particularly described as the west one-half (½) of the southeast one-quarter (¼), section nine (9), township ten (10) south, range thirty-four (34) east, in the county of Inyo, within the Northern division of the Southern district of California, which said Indian homestead entry was at all of the times herein mentioned within the exclusive jurisdiction of the United States and within the jurisdiction of this honorable court, with force and arms, in and upon Minnie Fuller, a full-blood Piute Indian woman," etc.

There are two sections of the Penal Code (Act March 4, 1909, c. 321) concerning the jurisdiction of the court to try criminal offenses, namely, section 272 and section 328 (35 Stat. 1142, 1151 [Comp. St. 1916, §§ 10445, 10502]). Sections 2145 and 2156 of the Revised Statutes (Comp. St. 1916, §§ 4148, 4159) need not be considered, because the lands here involved are not within the Indian country. Ex parte Tilden (D. C.) 218 Fed. 920. Section 328 is as follows:

"All Indians committing against the person or property of another Indian or other person any of the following crimes, namely, murder, manslaughter, rape, assault with intent to kill, assault with a dangerous weapon, arson, burglary, and larceny, within any territory of the United States, and either within or without an Indian reservation, shall be subject therefor to the laws of such territory relating to said crimes, and shall be tried therefor in the same courts and in the same manner and shall be subject to the same penalties as are all other persons charged with the commission of said crimes, respectively; and the said courts are hereby given jurisdiction in all such cases. And all such Indians committing any of the above-named crimes against the person or property of another Indian or other person within the boundaries of any state of the United States, and within the limits of any Indian reservation, shall be subject to the same laws, tried in the same courts and in the same manner, and be subject to the same penalties as are all other persons committing any of the above crimes within the exclusive jurisdiction of the United States: Provided, that any Indian who shall commit the offense of rape upon any female Indian within the limits of any Indian reservation shall be imprisoned at the discretion of the court."

The United States attorney concedes that the court has no juris-diction by reason of this section. No concession was necessary, however, because it is so plain that the court would not have jurisdiction by reason of this section that it will not admit of discussion. The United States attorney relies upon Donnelly v. United States, 228 U. S. 243, 268, 33 Sup. Ct. 449, 57 L. Ed. 820, Ann. Cas. 1913E, 710, United States v. Kagama, 118 U. S. 375, 6 Sup. Ct. 1109, 30 L. Ed. 228, and similar cases. These cases, however, deal with Indian reservations and are not in point here. But this section has an important bearing upon the interpretation to be given to section 272. In this respect, when Congress enacted section 328, it intended by that section to provide, so far as the Penal Code was concerned, for all cases concerning Indians that should be prosecuted in the federal court, and therefore the fact that some of the defendants are Indians in this case has no relation whatever to the jurisdiction of the court.

Section 272 of the Penal Code (Comp. St. 1916, § 10445), is as follows:

"The crimes and offenses defined in this chapter shall be punished as herein prescribed: * * *

"Third: *When committed within or on any lands reserved or acquired for the exclusive use of the United States, and under the exclusive jurisdiction thereof*, or any place purchased or otherwise acquired by the United States by consent of the legislature of the state in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building."

The United States attorney contends that the court has jurisdiction by virtue of the first part of this paragraph; that is to say, he contends that the land, upon which this murder was committed, was land reserved or acquired for the exclusive use of the United States and under the exclusive jurisdiction thereof.

The court cannot agree with this contention. The land, at the time of the settlement by the Indian upon it, was the public land of the United States, subject to homestead entry, and the Indian acquired the title to the land under an act of Congress, entitled "An act making appropriations for the current and contingent expenses of the Indian Department, and for fulfilling treaty stipulations with various Indian tribes, for the year ending June thirtieth, eighteen hundred and eighty-five, and for other purposes," passed July 4, 1884 (23 U. S. Stat. at Large, 76, 96, c. 180, 3 Fed. Stat. Ann. [2d Ed.] 820 [Comp. St. 1916, § 4612]). The provision of this act, authorizing the issuance of this patent, is as follows:

"That such Indians as may now be located on public lands, or as may, under the direction of the Secretary of the Interior, or otherwise, hereafter, so locate may avail themselves of the provisions of the homestead laws as fully and to the same extent as may now be done by citizens of the United States; and to aid such Indians in making selections of homesteads and the necessary proofs at the proper land offices, one thousand dollars, or so much thereof as may be necessary, is hereby appropriated; but no fees or commissions shall be charged on account of said entries or proofs. All patents therefor shall be of the legal effect, and declare that the United States does and will hold the land thus entered for the period of twenty-five years, in trust for the sole use and benefit of the Indian by whom such entry shall have been

made, or, in case of his decease, of his widow and heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his widow and heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever."

It seems to me perfectly plain that the land, upon which this murder was committed, was not reserved for the exclusive use of the United States, simply by reason of the fact that there is a trust provision in the patent. The United States held it in trust for the use of the Indian, and not for the use of the United States. The mere fact that the Indian is a ward of the government does not change the reasoning in the slightest. This precise question has never been directly passed upon by any court, but nevertheless we are not wholly without authority. In United States v. Kiya (D. C.) 126 Fed. 879 (see, also, Matter of Heff, 197 U. S. 488, 25 Sup. Ct. 506, 49 L. Ed. 848), Judge Amidon rendered an able opinion, which has a bearing upon the proposition under discussion. Congress, February 8, 1887 (24 Stat. 388, c. 119), passed an act entitled "An act to provide for the allotment of lands in severalty to Indians. * * *" 3 Fed. Stat. Ann. 830, § 6, amended May 8, 1906 (34 Stat. 182, c. 2348 [Comp. St. 1916, § 4203]). This act provided for the allotment of lands in Indian reservations in severalty to Indians. The statute provided for a patent to issue to the Indian, but having a clause reserving a trust in the government for the benefit of the Indian, the same as in the act of 1884. The act further provided that, after 'the expiration of 25 years a patent should issue to the Indian or his heirs under certain conditions. In the case at bar there does not seem to be any necessity for a second patent.

In the case just referred to Judge Amidon held that a crime committed upon land so allotted to an Indian was not within the jurisdiction of the United States District Court. This decision in itself could not have much weight here, but for the fact that, subsequent to said decision, Congress amended the act of February 8, 1887, and provided in such amendment that, during the time the lands were so held in trust by the government, crimes committed thereon should be within the jurisdiction of the United States court. If the trust clause in the act as originally enacted had given the United States court jurisdiction of crimes committed upon the land, then there was no necessity for Congress to amend the act. The amendment, therefore, amounts to a legislative interpretation that the trust provision in the allotment patent would not give the court jurisdiction. If the court, under the act alloting lands in severalty in Indian reservations, did not have jurisdiction by reason of the trust clause, a fortiori the court would not have jurisdiction under the statute by virtue of which the patent was granted in this case.

There is another phase of this matter that is entitled to consideration. In United States v. Bateman, 34 Fed. 86, the Circuit Court for the Northern District of California held that homicide committed within the Presidio military reservation was not an offense over which the courts of the United States had jurisdiction. In that case it is pointed out that, when California was admitted to the Union,

no reservation was made by the national government of jurisdiction over any property. And the federal court could only acquire jurisdiction to punish crime in any territory within the state by cession of the state. It is not necessary for me to go into this phase of the matter fully, but, in passing, I call attention to the statutes of California upon the subject. There are many acts of the Legislature of California ceding jurisdiction to the United States over certain specified territories, such as Indian reservations, military reservations, etc.; but there is none ceding jurisdiction to the United States over land such as is described in this indictment.

I am therefore of the opinion that this court has no jurisdiction, and the demurrer is sustained.