STATE, Respondent, *v.* YOUPEE, Appellant.

(No. 7,567.)

(Submitted September 21, 1936.   Decided October 1, 1936.)

[61 Pac. (2d) 832.]

*Mr. Frank L. Benson* and *Messrs. Marron & Foor*, for Appellant, submitted a brief; *Mr. Benson* argued the cause orally.

*Mr. Raymond T. Nagle,* Attorney General, and *Mr. C. J. Dousman,* Assistant Attorney General, for the State, submitted a brief; *Mr. Dousman* argued the cause orally.

MR. JUSTICE MORRIS delivered the opinion of the court.

The defendant was convicted in the district court of Roosevelt county on a charge of statutory rape. Defendant and his victim were tribal Indians living on the Fort Peck Indian Reservation and both were allottees of land on that reservation to which patent in fee had not been issued, but the crime was committed in the town of Culbertson, in Roosevelt county, which is located five miles or more from the nearest point of

the reservation. The fact that the crime was committed off the Indian reservation is not in issue. The Indian minor upon whom the rape was committed was sixteen years of age and not the wife of the defendant. At the close of the state's case, defendant moved for a directed verdict, which was denied, and, on conviction of the defendant as charged, his counsel moved for a new trial, which was also denied. The case comes here on appeal from the judgment and denial of the motion for a new trial. Three specifications of error are alleged, but all turn on the question of the jurisdiction of the state court to take cognizance of the crime.

It may be taken as settled beyond controversy that, where a crime is committed within the boundaries of a state, the state courts have exclusive jurisdiction to try the defendant, unless some specific federal law vests jurisdiction in the federal courts. These specific laws, to be controlling here, must be found in the Federal Constitution, the Acts of Congress, our Enabling Act or treaties between the United States and the tribe of Indians to which the defendant belongs. The only specific reference to Indians in the Federal Constitution is in section 8, Article I, which relates solely to the question of the regulation of commerce between the United States and Indian tribes. Article I, subdivision 2, section 4, of the Enabling Act, provides that the state shall disclaim any right or title to any Indian lands within the state and shall not tax the same, and that absolute jurisdiction and control shall remain in the United States until the title of the United States is extinguished. The title of the United States may be extinguished by allotment of the Indian lands and a patent in fee, free from any trust provisions either by specific grant or expiration of the trust period specified in the allotment deed. (*United States* v. *Pelican*, 232 U. S. 442, 34 Sup. Ct. 396, 400, 58 L. Ed. 676.)

The great majority of the actions involving the question of jurisdiction of Indian crimes have arisen out of whether the *locus in quo* of the action was Indian country or

not, no reference being made to Indians being wards of the government. 31 Corpus Juris, page 528, section 105, says: "The term [Indian country] applies to all the country to which the Indian title has not been extinguished, within the limits of the United States, whether within a reservation expressly set apart for the exclusive occupancy of Indians or not. * * * The criterion to determine whether a particular place has ceased to be Indian country is whether the Indian title to the land has or has not been extinguished." This, of course, refers to the Indian title held by the federal government for the Indians, not the title held by individual Indians of land to which they have title in fee, free from trust restrictions. (*United States* v. *Pelican,* supra.)

The question of jurisdiction between the federal and state courts has been passed upon in the following federal criminal cases among others, where both the defendant and his victim were Indians, and the crime was committed in Indian country: *United States* v. *Kagama,* 118 U. S. 375, 6 Sup. Ct. 1109, 30 L. Ed. 228; *United States* v. *Thomas,* 151 U. S. 577, 14 Sup. Ct. 426, 38 L. Ed. 276; *United States* v. *Pelican,* supra. Counsel for defendant cites the *Kagama Case* and quotes freely from the decision in support of their contention that the state is without jurisdiction. On page 5 of their brief they quote the last paragraph of the decision and then follow it with two paragraphs that appear in prior parts of that decision. This arrangement does not readily give the correct impression of what that case decides, and tends to confuse the question on which the court predicates its decision, the question there being "whether the courts of the United States have jurisdiction or authority to try and punish an Indian belonging to an Indian tribe, for committing the crime of murder upon another Indian belonging to the same tribe, both sustaining the usual tribal relations, said crime having been committed upon an Indian reservation made and set apart for the use of the Indian tribe to which said Indians both belonged." This was the major of the two questions which

the opinion determined in the controversy, and the facts are on all fours with the facts in the case at bar except the crime in that case was committed on an Indian reservation under the exclusive jurisdiction of the federal court, while here the the offense was committed in a town more than five miles removed from the reservation where both Indians had their domicile.

Justice Hughes, in speaking for the court in the *Pelican Case*, supra, said in the closing paragraph of that opinion: "The deceased must be regarded as one who was still under the government's care. Congress had not terminated that relation, and the commission of a crime against his person upon Indian lands, such as we have found the allotted lands in question to be, was punishable under the laws of the United States." Throughout practically all the cases, it will be found that no court has held that crimes committed on lands, under the control and supervision of the state, come under the jurisdiction of the federal courts unless, as in cases prosecuted for selling liquor to Indians, such as *United States Express Co.* v. *Friedman*, (C. C. A.) 191 Fed. 673, Congress has specifically provided for federal jurisdiction.

We find no statute or decision, either federal or state, which ▆▆▆▆ by any reasonable construction supports the contention of the defendant that his alleged offense is triable by the federal court. In *United States* v. *Lewis et al.*, (D. C.) 253 Fed. 469, three Indians were indicted for the murder of a fourth. The Indians were all wards of the government; the place where the crime was committed was the homestead of an Indian burdened with the 25-year trust restriction, which had not expired. The United States attorney, so the opinion states, relied upon *Donnelly* v. *United States*, 228 U. S. 243, 268, 33 Sup. Ct. 449, 57 L. Ed. 820, Ann. Cas. 1913E, 710, and upon *United States* v. *Kagama*, supra. Defendants demurred to the indictment, setting out want of jurisdiction of the federal court. The court sustained the defendants' de-

murrer under the provisions of section 272 of the Criminal Code, 18 U. S. C. A., section 451, which is in part as follows: "The crimes and offenses defined in this chapter shall be punished as herein prescribed: * * * Third. *When committed within or on any lands reserved or acquired for the exclusive use of the United States, and under the exclusive jurisdiction thereof,* or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building." The court said at page 472 of 253 Fed.: "It seems to me perfectly plain that the land, upon which this murder was committed, was not reserved for the exclusive use of the United States, simply by reason of the fact that there is a trust provision in the patent. * * * The mere fact that the Indian is a ward of the government does not change the reasoning in the slightest," citing cases. So through all such cases in which Indians are charged with crime it will be found that the question of jurisdiction turns upon the place of the crime, and not upon whether the Indian defendant be a ward of the government or not.

We think the general rule well expressed in 21 Corpus Juris, sections 128 and 130, pages 538 and 539, where it says: "It is usually held that a state court has no jurisdiction over crimes committed by or against Indians *within a reservation,* such jurisdiction being in the United States or the tribal courts; but there are a few decisions, most of them early ones, to the contrary." We find the rule laid down in 14 R. C. L., section 40, page 143, that: "Indians, though belonging to a tribe which maintains the tribal organization, occupying a reservation within a state, are amenable to state laws for murder or other offenses against such laws, committed by them *off the reservation* and within the limits of the state, even though the crime is committed against an Indian of the same tribe."

Nor do we find any substantial support for defendant's contention in this or other state decisions. In *State* v. *Spotted Hawk*, 22 Mont. 33, 44, 55 Pac. 1026, 1028, Chief Justice Brantly, speaking for the court, said: "The contention is made in this court, for the first time in this case, that Indians maintaining tribal relations, and occupying a reservation within the state, are not subject to the jurisdiction of state courts, and triable therein, for crimes committed by them against white men while off the reservation. * * * This contention cannot be maintained either upon reason or authority. Where crimes are committed by whites against Indians, or by Indians against whites, outside of a reservation situated within a state, the jurisdiction is in the state courts."

In the case of *State* v. *Big Sheep*, 75 Mont. 219, 243 Pac. 1067, 1071, a Crow Indian was charged in Big Horn county with having in possession "peyote" in violation of the statute of the state. Objection was made to the jurisdiction of the state court on the ground that the defendant was an Indian, a member of the Crow Tribe residing on the reservation, and the acts alleged were done on the Crow Indian Reservation. The defendant was tried, convicted and fined. A motion for new trial was made and denied, and the case came to this court on appeal. Chief Justice Callaway, speaking for the court, traced the history of federal legislation affecting the Indians. Such history makes it quite clear that Congress may, if it sees fit, take into its hands exclusive jurisdiction to deal with the Indians in all matters so long as they are wards of the government, but it has not seen fit to do so except in particular matters specially provided for. In the course of the last-mentioned opinion it is said: "The United States courts have always asserted jurisdiction over Indians living on and maintaining tribal relations within their reservations, and, whenever the question has been presented, have denied the jurisdiction of the state courts over them.

[Citing cases.] Congress has the power, which to some extent it has exercised, to prohibit and punish acts denominated misdemeanors within the reservations. A notable instance is the Act of January 30, 1897 (29 Stat. 506 [U. S. Comp. Stats., sec. 4137; 25 U. S. C. A., sec. 241]), prohibiting the introduction of liquor into the Indian country. (See *Hallowell* v. *United States,* supra [221 U. S. 317, 31 Sup. Ct. 587, 55 L. Ed. 750]; *United States* v. *Sandoval,* 231 U. S. 28, 34 Sup. Ct. 1, 58 L. Ed. 107.) And it has been held that the power extends to regulating and prohibiting traffic in intoxicating liquor with tribal Indians within a state, whether upon or off an Indian reservation (*United States* v. *Nice,* supra [241 U. S. 591, 36 Sup. Ct. 696, 60 L. Ed. 1192]). But this was upon the hypothesis that 'these Indians are yet wards of the nation, in a condition of privilege or dependency, and have not been discharged from that condition.' * * * Probably it would be more exact to say that the United States courts have always asserted federal jurisdiction, and denied state jurisdiction, over Indians who are wards of the government residing within Indian reservations.'' Further along in the opinion it is said: '' 'Moreover, it is very evident that the state never intended to attempt to extend its criminal laws over tribal Indians for acts committed *within a reservation.*' * * * We conclude, therefore, that, if the defendant, at the time he committed the act charged, was a citizen of the United States, and not under federal restriction, as of guardianship, or, if he committed the offense upon land to which the United States has relinquished title, he is subject to the jurisdiction of the courts of this state for the offense committed; otherwise he is not.''

In substance, the four questions outlined and decided by the court in that case were as follows: (1) If the defendant be an allottee holding a patent in fee, the state has jurisdiction; (2) if defendant be an allottee, a citizen, but has not received his patent in fee, he is under the exclusive jurisdiction of the United States if the offense be committed within Indian country; (3) if defendant be not an allottee, but a member of

the Crow Tribe who has not adopted the habits of civilized life and still maintains his tribal relations under the supervision of the Indian agent, he does not come under the state jurisdiction; (4) if defendant be a ward of the government, and the act was committed by him on lands to which the United States has relinquished title, he comes under the jurisdiction of the state. The last question passed upon by this court in that case is determinative of the case here, in our opinion.

In the case of *State* v. *Monroe,* 83 Mont. 556, 274 Pac. 840, it was held that an Indian policeman, a member of the Blackfeet Tribe, and a ward of the government, and living within the Blackfeet Indian Reservation, charged with manslaughter, the victim being a white man, was subject to the jurisdiction of the state courts, for the reason that he had received his patent in fee to a part of the lands allotted to him upon the reservation.

In the case of *State* v. *Phelps,* 93 Mont. 277, 19 Pac. (2d) 319, 320, a member of the Crow Indian Tribe, but of mixed blood, was convicted of stealing cattle on the Crow Indian Reservation. The case came here on appeal raising the question of the jurisdiction of the state court. In the opinion of the court, by Mr. Justice Matthews, it was said: "If a tribal Indian commits such a crime off the reservation, or a person not a tribal Indian commits such a crime on the reservation, the state court has jurisdiction; but, if a tribal Indian residing on the reservation commits such a crime on Indian land, the jurisdiction of the federal court is exclusive, even though the Indian has been accorded citizenship," citing cases. This court found the crime was committed on the Indian reservation by a tribal Indian allottee residing thereon who had not received a patent to the land in fee. The judgment of conviction was reversed and the cause remanded, with instructions to dismiss the information.

There are numerous decisions in other state jurisdictions in harmony with ours, and a few to the contrary, and by the

great preponderance of authority it is held that, as to crimes committed by Indians within a state, but without the bounds of ''Indian country'' or other lands under the control of the United States, as heretofore referred to, it is within the exclusive jurisdiction of the state to try and punish such Indians.

The judgment and order are affirmed.

ASSOCIATE JUSTICES STEWART, MATTHEWS and ANDERSON concur.

MR. CHIEF JUSTICE SANDS, being absent on account of illness, takes no part in the foregoing decision.