[Crim. No. 1627. Third Appellate District.—May 27, 1938.]

THE PEOPLE, Respondent, v. LINDLEY PRATT, Appellant.

Blaine McGowan for Appellant.

U. S. Webb, Attorney-General, and Gordon S. Hughes, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant, who is an Indian formerly residing on the Hoopa Reservation in Humboldt County, was convicted of the offense of having possession of metal knuckles contrary to the provisions of an act regulating the use and custody of deadly weapons. (Stats. 1923, p. 695; 1 Deering's Gen. Laws of 1931, p. 900, Act 1970, sec. 1.) The offense was committed on the Hoopa Reservation. The defendant was sentenced to state prison at Folsom for the indeterminate term prescribed by law. From that judgment and from the order denying a new trial this appeal was perfected.

The defendant contends the state court was without jurisdiction to try or punish him on the criminal charge for the reason that he is an Indian who was living on the Hoopa Reservation in tribal relations; that the court erred in receiving evidence of his admissions without adequate proof of the foundation therefor, and that the district attorney

was guilty of prejudicial misconduct in the course of his argument to the jury.

The Superior Court of Humboldt County under the circumstances of this case had jurisdiction to try the defendant for the crime of which he was charged. It appears without conflict that the defendant is an Indian who lived on the Hoopa Reservation in Humboldt County, where tribal relations were maintained. He was, however, the owner of five acres of land in that reservation which he inherited from his father, who was also a member of that tribe and lived on the same reservation. The defendant's land is a portion of a government allotment which was granted to his father pursuant to a federal statute. After the defendant inherited the land, the government gave him a patent thereto on April 22, 1926, which was recorded in Book 24 of Patents, at page 186, Humboldt County Records. The acquiring of a patent to the title of that land, under the United States statutes, had the effect of emancipating him from tribal relations and conferred upon him all the rights, privileges and immunities of a citizen of the United States, rendering him amenable to the civil and criminal laws, and conferred jurisdiction on the state courts to try and punish him for violation of state laws.

The United States statutes provide for the surveying and allotment to individual Indians residing upon reservations of a limited number of acres of land susceptible of agricultural or grazing purposes. (25 U. S. C. A., p. 184, chap. 9, sec. 331.) The federal statutes also provide that the government may hold such allotted land in trust for the period of twenty-five years "for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or encumbrance". (25 U. S. C. A., p. 220, chap. 9, sec. 348.) Section 349 of that same chapter then provides that:

"At the expiration of the trust period and when the lands have been conveyed to the Indians by patent in fee, as provided in section 348, then each and every allottee shall have

the benefit of *and be subject to the laws, both civil and criminal, of the State or Territory in which they may reside.*"

In 25 U. S. C. A., section 217, page 111, note 22, it is said with respect to the jurisdiction of state courts over crimes committed by an Indian on a reservation, who has received a patent to land allotted to him by the government:

"Under Act of Feb. 8, 1887, c. 119, 24 Stat. 388 (set out, as amended by Act May 8, 1906, in Code at section 349 of this title), providing for the allotting of lands constituting an Indian reservation to the Indians in severalty and the issuing of patents to the allottees therefor, and further providing that upon the completion of said allotments and the issuing of patents to each of the allottees constituting the tribe each allottee shall have the benefit of and be subject to the laws, both civil and criminal, of the state in which he may reside upon completion of the allotments and the issuing of patents to each of the allottees, *jurisdiction is conferred on the state courts* to try and punish an allottee for any violation of the laws of the state though the offense committed by one against the person or property of an Indian or other person within the limits of an Indian reservation. *In re Now-ge-zhuck* (1904) 69 Kan. 420 [76 Pac. 877]."

It has been repeatedly held that, pursuant to the provision last quoted, an Indian who has obtained a patent in fee to an allotment of reservation land is no longer deemed to be a ward of the government, and upon the contrary that he thereafter acquires the status of a citizen of the United States with all the rights, privileges and immunities thereof, subject to the civil and criminal laws of the state or territory where he resides, even though the land which he acquires is within the borders of an Indian reservation. (*State* v. *Big Sheep,* 75 Mont. 219 [243 Pac. 1067, 1070] ; *In re Now-ge-zhuck,* 69 Kan. 410 [76 Pac. 877] ; *Ex parte Nowabbi,* (Okl. Crim.) 61 Pac. (2d) 1139 ; *State* v. *Phelps,* 93 Mont. 277 [19 Pac. (2d) 319, 322] ; *State* v. *Lott,* 21 Idaho, 646 [123 Pac. 491] ; *Louie* v. *United States,* 274 Fed. 47 ; *United States* v. *Kiya,* 126 Fed. 879.) In the Big Sheep case, *supra,* it is said in that regard:

"It is clear that an Indian who has obtained patent in fee to his allotment not only is a citizen of the United States, but has all the rights, privileges, and immunities of citizens of the United States, and is subject to the civil and criminal

laws of the State of Montana. He is no longer a ward of the government.''

There are certain Indian reservations in the United States over which the federal government has specifically retained jurisdiction to try and punish the Indian inhabitants thereof for violations of criminal laws. Where the enabling act of Congress admitting a state into the Union makes no such reservation of jurisdiction with respect to Indian tribes therein, and upon the contrary when states are admitted ''on an equality with the original states'' the sole jurisdiction to try and punish Indians therein who have been emancipated in the manner heretofore stated is conferred upon the state courts, with certain exceptions which are not here involved. (*Draper* v. *United States*, 164 U. S. 240 [17 Sup. Ct. 107, 41 L. Ed. 419]; *United States* v. *McBratney*, 104 U. S. 621 [26 L. Ed. 869]; 31 C. J. 539, sec. 128.) In the McBratney case, *supra*, the court says:

''Whenever, upon the admission of a State into the Union, Congress has intended to except out of it an Indian reservation, or the sole and exclusive jurisdiction over that reservation, it has done so by express words. . . . The State of Colorado, by its admission into the Union by Congress, upon an equal footing with the original States in all respects whatever, without any such exception . . . has acquired criminal jurisdiction. . . . The courts of the United States have, therefore, no jurisdiction to punish crimes within that reservation.''

The preceding language applies with equal force to the emancipated Indians on the Hoopa Reservation in this state. California was admitted into the Union ''on an equal footing with the original states in all respects whatever''. (9 U. S. Stats. at Large, p. 452.)

There are certain exceptions to the rule above stated which confers upon state courts the jurisdiction to try and punish Indians for crimes committed by them on an Indian reservation when the accused has been emancipated by receiving a federal patent to government land. Such exceptions apply to murder and other designated crimes by virtue of the specific reservation of jurisdiction in the United States courts to try and punish Indians for such specified crimes wherever they may be committed. (U. S. Crim. Code, sec. 328, U. S. Compiled Stats. of 1918, p. 1721, sec. 10502, 18 U. S. C. A.,

sec. 548, 35 Stats. at Large, p. 1151; *Apapas* v. *United States,* 233 U. S. 587 [34 Sup. Ct. 704, 58 L. Ed. 1104].) The offense of having possession of metal knuckles is not included within that statute, and the state courts, therefore, have exclusive jurisdiction of the last-mentioned offense.

It follows that the Superior Court of Humboldt County had exclusive jurisdiction to try and sentence the defendant for the crime with which he was charged, in spite of the fact that he lived on the Hoopa Reservation where Indian tribal relations are maintained, for the reason that he was previously emancipated from his tribal relations and became a citizen subject to the civil and criminal laws of California, by acquiring a patent in fee to his land under the federal statutes above cited.

The defendant's admissions which were received by two officers, reduced to writing and signed by him, to the effect that he had in his possession the metal knuckles with the custody of which he was charged, was properly admitted in evidence at the trial. The foundation for the reception of that evidence was fully established. Two witnesses testified positively that the statement was voluntarily made by the defendant without an offer of reward or threatened punishment, and that he was informed before he signed the statement, which was previously read to him, that he was not required to make any statement unless he desired to do so, and on the contrary that if he did make a statement it might be used against him at the trial of a criminal case. The record contains no evidence to the contrary. The defendant did not take the witness-stand in his own behalf.

We are of the opinion the district attorney was not guilty of prejudicial misconduct in his argument to the jury. After reviewing the uncontradicted evidence to the effect that the defendant was armed with metal knuckles concealed beneath a handkerchief covering his hand, with which he threatened to assault the prosecuting witness, James Marshall, the district attorney inquired, ''Is there any denial of that?'' In the defendant's written statement, he admitted his possession of the metal knuckles. There was no evidence to the contrary. Since the amendment to section 1323 of the Penal Code in 1935, the district attorney is specifically authorized to comment to the jury upon the defendant's failure to deny

or explain the evidence which is adduced against him at the trial.

The other statements of the district attorney, of which the defendant complains, constituted legitimate response to the argument of adverse counsel. There is no merit in those assignments of misconduct.

The judgment and the order are affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 11, 1938.