319 P.2d 998

**Paul WILLIAMS and Lorena Williams, husband and wife, Appellants,**

**v.**

**Hugh LEE, doing business as Ganado Trading Post, Appellee.**

No. 6172.

Supreme Court of Arizona.

Jan. 7, 1958.

W. E. Ferguson, Holbrook, Wilson, Compton & Wilson, Flagstaff, Laurence A. Davis, Phoenix, for appellants, Murray L. Crosse, Field Solicitor, Dept. of the Interior, Gallup, N. M., of counsel.

McQuatters & Stevenson, Flagstaff, for appellee.

WINDES, Justice.

Suit in the superior court of Apache county by Hugh Lee dba Ganado Trading Post against Paul Williams and his wife, Lorena. Plaintiff was operating the Ganado Trading Post on the Navajo Indian reservation under authority given by the Secretary of Interior and Commissioner of Indian Affairs. Defendants are Indians, members of the Navajo tribe and residing on the reservation. Plaintiff operating as such trader sold articles to defendants on credit. There being a balance unpaid, this suit was filed. Service of summons was made upon defendants within the boundaries of the Navajo Indian reservation. At the time of commencing the action writ of attachment was procured and levied upon sheep owned by the defendants. The levy was made upon the reservation.

Defendants moved to dismiss the action upon the ground that the court lacked jurisdiction and filed a counterclaim for wrongful attachment. Judgment was rendered for the plaintiff on his complaint and the counterclaim was dismissed. Defendants bring the matter before us claiming the trial court had no jurisdiction over their persons for the reason that a state officer cannot legally serve process upon a Navajo Indian within the boundaries of the reservation and that the superior court has no jurisdiction over the subject matter in that it has no power to enforce debts contracted on the reservation by tribal Indians in the course of dealing with a federally licensed Indian trader. There was no assignment of error nor argument questioning the correctness of the court's dismissal of the counterclaim, consequently there will be no further reference thereto.

The defendants were and are citizens of the United States, 8 U.S.C.A. § 1401, and were and are residents of the state of Arizona. Porter v. Hall, 34 Ariz. 308, 271 P. 411, 415, overruled only as to right of suffrage in Harrison v. Laveen, 67 Ariz. 337, 196 P.2d 456. In the Hall case this court said:

"We have no hesitancy in holding, therefore, that all Indian reservations in Arizona are within the political and governmental, as well as geographical, boundaries of the state, and that the exception set forth in our Enabling Act applies to the Indian lands considered as property, and not as a territorial area withdrawn from the sovereignty of the state of Arizona. * * *"

██ ██ Defendants contend that under the treaty with the Navajos of June 1, 1868, 15 Stat. 667, and federal statutes, 25 U.S.C.A. § 231, state agents may enter upon the reservation only for the purpose of inspection of health and educational conditions and enforcement of sanitation and quarantine regulations or to enforce compulsory school attendance laws. The contention is probably sound when the subject matter involved is something that is of no concern to the state, something that is clearly within the exclusive jurisdiction of federal authorities. Unless permitted by the federal government, the state would be outside the sphere of its authority in attempting to interfere with the exclusive power of the federal government in administering the affairs of Indians and promoting their education and health. The state does have some degree of sovereignty over Indian reservations. Draper v. United States, 164 U.S. 240, 17 S.Ct. 107, 41 L.Ed. 419. That case is authority for the proposition that in a case over which the state would have jurisdiction except for the fact that it occurred within the boundaries of an Indian reservation, it would have such jurisdiction after admission of the state to the Union except to the extent that sole and exclusive power over the reservation in the federal government is expressly reserved. Our view is that if the subject matter of the litigation is one that the state court has jurisdiction to try and determine and the federal government has not reserved sole and exclusive jurisdiction over the territory involved, the state officers may enter such territory under the state's sovereign authority and serve the necessary process to enable it to exercise its legitimate jurisdiction. Any other rule would lead to ridiculous results. For illustration, if defendants' reasoning be sound, a white man could murder another white man on or off an Indian reservation and would be secure from Arizona prosecution so long as he could remain within the boundaries of a reservation. A civil dispute between two white traders on a reservation could not be tried for lack of service so long as the defendant remained on the reservation. In other words the state would have territorial jurisdiction without power to exercise it. Such is not and cannot be the law.

██ Appellant urges that Arizona courts have no jurisdiction to enforce payment against a Navajo Indian of a debt which arose out of his dealing with a

federally licensed trader on the reservation. It is not contended that the federal courts have such jurisdiction but, in defendants' motion to dismiss, it is contended that jurisdiction belongs on the reservation in the tribal court and no other. It is argued that the United States has exclusive jurisdiction over civil actions involving Indians except to the extent that Congress has conferred jurisdiction upon the state courts. This is not completely correct. The correct rule concerning the extent of state jurisdiction over Indian reservations is stated in United States v. McGowan, 302 U.S. 535, 58 S.Ct. 286, 288, 82 L.Ed. 410, as follows:

> "Enactments of the federal government passed to protect and guard its Indian wards only affect the operation, within the colony (reservation), of such state laws as conflict with the federal enactments."

We do not question the authority of the federal government over tribal Indians and its right to deprive the state courts of jurisdiction to try and determine litigation of the nature herein involved, but we think the correct statement of the rule is that enunciated by Prof. Ray A. Brown, an eminent authority on Indian law, in his article, The Indian Problem and the Law, 39 Yale Law Journal, pages 314–315. The rule is stated in the following language:

> "While the theory of tribal allegiance and federal guardianship has

served in criminal matters to place the Indian in a special category, such has not generally been the result in matters of civil rights. The Indian, whether tribal and a ward of the government or not, may, *except where specially restricted by act of Congress*, make contracts, acquire and dispose of property, and sue and be sued in the state or federal courts." (Emphasis ours.)

To the same effect, 42 C.J.S. Indians § 8 b:

> " * * * an Indian may be sued in the state courts in any matter over which the United States has not expressly retained jurisdiction. Where not prohibited by statute, Indians may be sued on contracts or in tort."

Many courts have recognized the right of state courts to assume jurisdiction over disputes between Indians and whites. Swartzel v. Rogers, 3 Kan. 374, was a suit between Shawnee Indians to partition land located on the reservation. After declaring there was nothing to show the property was restricted, the court said:

> "The fact that the contestants are Shawnee Indians, did not deprive the district court nor does it forbid to this court the exercise of jurisdiction either as to parties or subject matter. That the property belongs to Indians is not sufficient to place it beyond the jurisdiction of the state courts; and if the subject matter be within their

jurisdiction, the parties whether Indians or white men, have the right to litigate about it therein."

That case was cited as authority by the United States Supreme Court in the case of Felix v. Patrick, 145 U.S. 317, 12 S.Ct. 862, 36 L.Ed. 719. Stacy v. LaBelle, 99 Wis. 520, 75 N.W. 60, 41 L.R.A. 419, was a suit in the state court against an Indian for a balance due on account for goods, wares and merchandise sold to the Indian by the plaintiff who was an Indian trader on the reservation operating under and by virtue of a license issued by the United States. It was held the state court had jurisdiction. Red Hawk v. Joines, 129 Or. 620, 278 P. 572, was an action brought by an Indian who was an allottee without final patent on the Umatilla Indian reservation against a white man to replevy cattle taken from the Indian's possession. State jurisdiction was sustained with a very thorough discussion of the problem of jurisdiction over the Indian, his personal property and over the reservation. Bonnet v. Seekins, 126 Mont. 24, 243 P.2d 317, was a case where the Indian brought suit against a white to recover rent due under a lease of land held under an allotment. The lease had been approved by the Indian agency. It was held the state court had jurisdiction. To the same effect is Stevenson v. Christie, 64 Ark. 72, 42 S.W. 418, which was a suit by a white man against an Indian on a contract made in Indian territory as the result of the operation by the white man of a mercantile business in the Indian territory.

There are cases such as is before this court that were tried in the state courts wherein jurisdiction was apparently conceded or at least not presented. Tinker v. Midland Valley Mercantile Co., 25 Okl. 160, 105 P. 333. This was a suit by an Indian trader against an Indian on a promissory note which defendant contended was void because it was for credit given in excess of that authorized by statute. The case was reviewed by the United States Supreme Court and reversed but not on jurisdictional grounds. Tinker v. Midland Valley Mercantile Company, 231 U.S. 681, 34 S.Ct. 252, 58 L.Ed. 434.

■ We are cited to a regulation of the Commissioner of Indian Affairs to the effect that a trader may extend credit to Indians but that such credit will be at the trader's own risk. The argument is advanced that this renders the debt unenforceable in the state court and ousts all courts of jurisdiction to hear the matter. Whether this regulation renders the debt unenforceable is not before us except to the extent that such enforcement may deprive the court of jurisdiction for the reason that the assignment of error in this matter presents only the jurisdictional question. We are clearly of the opinion that the regulation has nothing to do with

the power of any court to determine a dispute concerning its application. If in fact the effect is to render the debt unenforceable, it is a proper defense on the merits but does not deprive the court of power to hear the matter.

When the action was commenced a writ of attachment was issued directing the sheriff to attach sheep belonging to defendants and located upon the reservation. The levy was made. Before final disposition of the case plaintiff moved for authority to sell the property and impound the proceeds. In response to this motion defendants moved to quash the attachment and levy upon the ground, among others, that the court had no jurisdiction over the property proposed to be sold. The court ruled adversely to defendants and ordered the property sold. The stock was sold at public auction at the trading post of plaintiff. Costs of sale were $246.72. The final judgment was in the sum of $82.22. Defendants by express assignment contend the court erred in permitting the sale and proceedings under the writ of attachment for the reason that the state court has no jurisdiction to interfere with property of tribal Indians within an Indian reservation.

██ We believe there can be no serious question that under the commerce clause of the United States constitution and under the right to protect the Indian and his property, the federal government may prescribe the conditions under which the tribal Indian may dispose of or others may acquire his property, while located on the reservation. If there be a federal statute or lawful regulation adopted pursuant to authority of federal statute prescribing restrictions for the buying or selling of an Indian's property on the reservation, a state court has no right nor power to enforce a state law concerning the disposition of such property which conflicts with the federal statute or regulation. United States v. McGowan, supra.

██ Pursuant to its power to supervise and control commerce, a federal license is required to trade upon the reservation. The federal statute provided that such trading shall be done only "under such rules and regulations as the Commissioner of Indian Affairs may prescribe for the protection of said Indians." 25 U.S.C.A. § 262. Among the regulations adopted is the following:

"All trade with Indians shall be confined to the premises specified in the license, except the buying of livestock and livestock products, which shall be covered by special permits issued by the superintendent." 25 C.F.R. 277.13.

We interpret this regulation as placing livestock in a special category and prohibiting buying of such property from the Indian without special permits issued by the superintendent. We can think of no purpose for the regulation except to protect the In-

248

.dian in the sale of his livestock by giving the superintendent supervision over the sales. To permit the state law to reach into an Indian reservation and require the sale of his livestock at public sale under execution clashes with the provisions of the foregoing regulation and operates to deprive the superintendent of his power of supervision over sales of Indian property and takes from the Indian the protective cloak of such supervision. We fail to see how such execution sales of livestock may be effected without substituting the state law on execution sale for the reservation law as prescribed by the regulation defining the method of selling Indian livestock. We think such substitution cannot be made and the state law cannot operate under such conditions. The attachment should have been quashed for lack of jurisdiction of the state court to force the sale thereunder.

Plaintiff advances the theory that because the Indians are citizens they must be treated as having been emancipated from government supervision. It is argued that since they enjoy the privileges of citizenship, they must bear the burdens the same as other citizens. The correct rule is that the mere fact Indians have become citizens does not deprive the federal government of the right and power to pass laws and authorize regulations for the protection of Indians as a tribal people. Hallowell v. United States, 221 U.S. 317, 31 S.Ct. 587,

55 L.Ed. 750; United States v. Waller, 243 U.S. 452, 37 S.Ct. 430, 61 L.Ed. 843 (cited with approval in Begay v. Miller, 70 Ariz. 380, 222 P.2d 624).

Judgment is reversed as to the levy and sale under attachment and otherwise affirmed.

UDALL, C. J., and PHELPS, STRUCK-MEYER and JOHNSON, JJ., concur.