436 P.2d 484

Adrian F. MORGAN, Administrator of the Estate of Teresa Ann Morgan, Deceased, Appellant,

v.

The COLORADO RIVER INDIAN TRIBE, an organized Indian Tribe, Appellee.

No. 1 CA–CIV 379.

Court of Appeals of Arizona.

Jan. 24, 1968.

Rehearing Denied Feb. 21, 1968.

Decision Vacated July 12, 1968.

See 103 Ariz. 425, 443 P.2d 421.

Caine, Brigham & Hocker, Tempe, by, R. Kelly Hocker, Tempe, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by, John H. Lyons and Robert G. Beshears, Phoenix, for appellee.

CAMERON, Chief Judge.

This is an appeal by the administrator of the estate of Teresa Ann Morgan, deceased, from an order of the trial court granting the motion of the defendant-appellee, Colorado River Indian Tribe, to dismiss as to said Indian tribe on the basis of sovereign immunity.

The sole question presented to this Court is whether or not the Colorado River Indian Tribe in its operation of a commercial enterprise is amenable to civil suit in the courts of the State of Arizona in which state the reservation is located and the alleged tort was committed.

The facts necessary for a determination of this matter on appeal are as follows. On 18 August 1964 one of the defendants, Ralph Ramsey, Jr., was operating a motor boat on the Colorado River and towing water-skiiers in the vicinity of the Blue Water Marina Park owned and operated by the tribe as a commercial enterprise. Around 2:30 in the afternoon Ramsey and his passenger in the boat, who was being used as a "spotter", began towing a water-skiier. After proceeding down the river Ramsey turned his boat towards the Arizona side of the river in order to permit the skiier to land at the park. The skiier was a beginner, and as a result of the turn she was forced to cross the wake caused by the motor boat. In crossing the wake the skiier fell, and Ramsey was informed of this by his "spotter". After the skiier fell, Ramsey turned to the rear in order to spot the location of the skiier. Immediately thereafter the "spotter" saw an arm and hand in the water, directly in back of the boat. The boat had struck and killed Teresa Ann Morgan. The area of the park where the decedent was struck had been used for swimming, however, the area was neither posted nor roped off prohibiting boats from entering the area.

A wrongful death action was brought in the Yuma County Superior Court of the State of Arizona by the appellant against the owner of the boat, the "spotter", and the appellee, Colorado River Indian Tribe. The tribe, as the owner and operator of the park, was sued on the theory of negligence in maintaining the resort, and failing to provide a safe area for swimmers. The tribe moved to dismiss on sovereign immunity which motion was granted and from said order the estate appeals.

The Colorado River Indian Tribe was created by an act of Congress approved on 3 March 1865 (Statutes At Large, Vol. 13, page 559). The geographic limits of the reservation were defined in an Executive Order issued 15 May 1876 and encompassed

both sides of the Colorado River. The Blue Water Marina Park is located on the Arizona side of the Colorado River upon reservation land, and the facts are sufficient from which the court could find that the accident in question occurred on that portion of the river which is encompassed by the external boundaries of the reservation.

■ The relationship of Indian tribes to the states in which they are located has plagued the courts since 1832 when Chief Justice Marshall in Worcester v. State of Georgia, 31 U.S. (6 Pet.) 515, 8 L.Ed. 483 (1832) stated that the Indian nations were distinct political communities and therefore states had no jurisdiction over Indians in Indian country without the necessary congressional legislation. The law is clear today that civil and criminal jurisdiction by the states over reservation Indians is allowed only under such circumstances as the Congress may direct. Organized Village of Kake v. Egan, 396 U.S. 60, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962).

"* * * An Indian tribe is not subject to suit without the consent of Congress. Nor may a tribe be sued indirectly by suing its tribal officers or the United States as trustee or guardian of the tribe. No law has been cited and none can be found which would subject the Crow Tribe to a suit of the nature involved in this action." Barnes v. United States, D.C., 205 F. Supp. 97, 100 (1962).

And:

"Indian nations, as an attribute of their quasi-sovereignty, are immune from suit, either in the federal or state courts, without Congressional authorization." Maryland Casualty Company v. Citizens National Bank of West Hollywood, 5 Cir., 361 F.2d 517, 520 (1966). See also Native American Church of North America v. Navajo Tribal Council, 10 Cir., 272 F. 2d 131 (1959); Coiliflower v. Garland, 9 Cir., 342 F.2d 369 (1965); Haile v. Saunooke, 4 Cir., 246 F.2d 293 (1957); Crosse, Criminal and Civil Jurisdiction in Indian Country, 4 Ariz.L.Rev. 57, Kane, Jurisdiction Over Indians and Indian Res-

ervations, 6 Ariz.L.Rev. 237, Reynolds, Notes, 5 Ariz.L.Rev. 131.

The Congress of the United States in recent years has enlarged the area wherein civil and criminal jurisdiction over reservation Indians can be maintained by the states, and from reading the cases and statutes it appears that the Congress of the United States has provided three methods whereby the state courts can obtain jurisdiction over reservation Indians and Indian tribes in civil matters.

The first and probably the most direct method is contained in 28 U.S.C. § 1360 which is a direct grant of authority to the states reading in part as follows:

"(a) Each of the States or Territories listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over other civil causes of action, and those civil laws of such State or Territory that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory."

Neither the State of Arizona nor the Colorado River Indian Tribe are listed in 1360 of Title 28.

■ The second method appears to be by way of Sections 476 and 477 of Title 25 U.S.C.A. which provide that Indian tribes may be organized, and that a constitution and bylaws may be enacted which when approved by the Secretary of the Interior may contain provisions which allow the tribe to sue and be sued in state courts of competent jurisdictions. Such was the case cited by appellee which stated:

"The defendant by adopting incorporation under 25 U.S.C.A. § 476 and consenting to sue and be sued in courts of competent jurisdiction within the United States, has rendered itself amenable to the courts of the State of Colorado in any

action of which the state courts may take cognizance. It has recourse to the state courts for the protection of its own rights and is answerable in said courts to those who assert claims against it." Martinez v. Southern Ute Tribe, 150 Colo. 504, 374 P.2d 691, 694 (1962).

In the instant case we have searched the record and we find nothing in the organization of the Colorado River Indian Tribe, their bylaws or otherwise which would bring them within the purview of the Colorado case and 25 U.S.C.A. Sections 476 and 477.

The third method is a method provided by the statutes of 15 August 1953, C 505, Section 6, 67 Stat. 590:

"Sec. 6. Notwithstanding the provisions on any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this Act (adding § 1360 to this Title and § 1162 Title 18): PROVIDED, that the provisions of this Act shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes as the case may be."

When Arizona was admitted to the Union they were required to include in their constitution the following ordinance:

"The people inhabiting this State do agree and declare that they forever disclaim all right and title to the unappropriated and ungranted public lands lying within the boundaries thereof and to all land lying within said boundaries owned or held by any Indian or Indian tribes, the right or title to which shall have been acquired through or from the United States or any prior sovereignty, and that, until the title of such Indian or Indian tribe shall have been extinguished, the same shall be, and remain, subject to the dis-

position and under the absolute jurisdiction and control of the Congress of the United States." Arizona Constitution, Article XX, Paragraph 4, A.R.S.

In an action by a licensed trader against a reservation Indian for an amount due under a credit sale made on the reservation, our Supreme Court has stated what we believe to be the far better rule in this situation:

"* * * Our view is that if the subject matter of the litigation is one that the state court has jurisdiction to try and determine and the federal government has not reserved sole and exclusive jurisdiction over the territory involved, the state officers may enter such territory under the state's sovereign authority and serve the necessary process to enable it to exercise its legitimate jurisdiction. Any other rule would lead to ridiculous results." Williams v. Lee, 83 Ariz. 241, 244, 319 P.2d 998, 1000 (1958).

The United States Supreme Court, however, in overruling the Supreme Court of the State of Arizona stated as follows:

"In a general statute Congress did express its willingness to have any State assume jurisdiction over reservation Indians if the State Legislature or the people vote affirmatively to accept such responsibility. To date, Arizona has not accepted jurisdiction, possibly because the people of the State anticipate that the burdens accompanying such power might be considerable." Williams v. Lee, 358 U.S. 217, 222, 223, 79 S.Ct. 269, 272, 3 L.Ed.2d 251 (1959).

We have gone over the file, and we find nothing which would indicate that either Congress or the State of Arizona has done the necessary acts which would provide for civil jurisdiction over the Colorado River Indian Tribe for an alleged tort committed either on or off the reservation. While we agree with the appellant and the rationale of the Supreme Court of Arizona that an Indian tribe, in pursuit of commercial enterprises in the state, should be amenable to suit in the state courts as a result of torts committed in these activities, in absence of

action by Congress to the contrary, it would appear that the United States Supreme Court has ruled to the contrary and any change must be by legislation or constitutional amendment and not by court decision.

Judgment affirmed.

DONOFRIO and STEVENS, JJ., concur.