532 P.2d 896

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**John Paul CUTNOSE, Defendant-Appellant.**

**No. 1444.**

Court of Appeals of New Mexico.

Oct. 30, 1974.

Rehearing Denied Nov. 19, 1974.

Certiorari Denied Dec. 20, 1974.

Chester H. Walter, Jr., Chief Public Defender, Bruce L. Herr, Appellate Defender, Joseph A. Roberts, District Public Defender, Santa Fe, for defendant-appellant.

David L. Norvell, Atty. Gen., David McArthur, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

Defendant was convicted of two counts of aggravated assault contrary to § 40A–3-2(A), N.M.S.A.1953 (2d Repl.Vol. 6), two counts of aggravated assault upon a peace officer contrary to § 40A–22–21(A)(1), N.M.S.A.1953 (2d Repl.Vol. 6), and one count of criminal trespass contrary to § 40A–14–1, N.M.S.A.1953 (2d Repl.Vol. 6). These crimes occurred at a hospital in Gallup, McKinley County, New Mexico. Defendant asserts several grounds for reversal. Three issues are dispositive. They are: (1) jurisdiction, (2) the indictment failed to properly charge an offense, and (3) instructions on the required intent.

*Jurisdiction*

By two pretrial motions, defendant asserted New Mexico courts had no jurisdiction over the defendant or over the offenses charged. There are two claims.

The first claim is based on federal statutes. 18 U.S.C.A. § 1153 (Supp.1974) provides that an Indian committing certain identified crimes "within the Indian country" is subject to the "exclusive jurisdiction of the United States." The crimes identified appear to include the four assault convictions, but do not appear to include the criminal trespass conviction. 18 U.S.C.A. § 1151 defines "Indian country" to mean Indian reservations, "dependent Indian communities" and Indian allotments. Defendant claims the hospital where the crimes were committed was a dependent Indian community.

The second claim is based on the Navajo Tribal Code. The provision of the Tribal Code, quoted in defendant's brief, is 7 N.T.C. § 134. That section purports to extend the territorial jurisdiction of the Navajo Tribe and the Navajo Tribal Courts to Navajo Indian Country. The definition of Navajo Indian Country includes "land * * * within the exterior boundaries of the Eastern Navajo Agency." The definition also includes land not covered by previous definitions "administered by the Federal Indian Service for the benefit of dependent Navajo 'Indian communities.' "

The second claim raises legal issues as to the authority of the Navajo Tribe, by adopting its Code, to oust the State of New Mexico of its jurisdiction. Compare Kennerly v. District Court of Montana, 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971). The legal issues need not be answered. Whether the physical location of the crimes was within a dependent Indian community under 18 U.S.C.A. § 1151, or within Navajo Indian Country defined in the Tribal Code, are questions of fact. United States v. Martine, 442 F.2d 1022 (10th Cir. 1971); compare Morton v. Ruiz, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). We dispose of both jurisdictional claims on the facts.

A hearing was held on various motions. Included was defendant's first motion attacking the court's jurisdiction. The trial court's order of March 27, 1973 deferred ruling on the jurisdictional claim "until April 5, 1973, to afford [defendant] an opportunity to present evidence thereon." No evidence was presented. Instead, de-

fendant filed a second motion attacking the court's jurisdiction on April 13, 1973. The trial court's order denying both motions was entered April 27, 1973.

The jurisdictional challenge was to a court exercising general jurisdiction. N.M.Const. Art. 6, § 13. The burden was upon defendant to demonstrate a lack of jurisdiction in the district court. Having presented no evidence as to lack of jurisdiction, defendant did not meet his burden in connection with the pretrial motions. State v. Lucero, 82 N.M. 367, 482 P.2d 70 (Ct.App.1971); compare Begay v. First National Bank of Farmington, 84 N.M. 83, 499 P.2d 1005 (Ct.App.1972).

At trial, defendant renewed his jurisdictional claims. The evidence at trial is that the crimes were committed at "the U. S. Public Health Service Hospital known as the Gallup Indian Medical Center," that all the taxpayers own the hospital. The chief executive officer of the hospital testified his immediate superior was in Window Rock, Arizona. The FBI agent testified that in negotiating the surrender of defendant and others, the agent insisted that the surrender be to the Sheriff of McKinley County because "jurisdiction in this largely rested with the McKinley County * * *." The evidence supports the inference that patients of the hospital were largely Navajos. However, "[t]he mere presence of a group of Indians in a particular area would undoubtedly not suffice" to establish a dependent Indian community under 18 U.S.C.A. § 1151. United States v. Martine, supra.

The evidence at trial did not establish an absence of trial court jurisdiction on the basis of a dependent Indian community under 18 U.S.C.A. § 1151, or on the basis of a dependent Navajo Indian Community under the Tribal Code.

The jurisdictional claim based on the Navajo Tribal Code has two additional deficiencies in the facts. (a) In his brief, defendant asserts the hospital is on land within the exterior boundaries of the Eastern Navajo Agency. This contention appears for the first time in the brief and has no factual support. (b) The Tribal Code provision relied upon purports to apply only to Navajos. The record indicates defendant is an Indian, there is neither evidence nor inference that defendant is a Navajo.

There is no factual basis for defendant's jurisdictional claims.

*Indictment Failed to Properly Charge an Offense*

By pretrial motion, defendant attacked the legal sufficiency of each count of the indictment. Error is claimed because the motion was denied. We consider only the sufficiency of the criminal trespass charge.

Relying on Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), defendant asserts the indictment deprived him of due process of law because it did not state the particulars of the trespass charge. *Russell* involved the sufficiency of an indictment charging violation of a federal statute making it a crime to refuse to answer certain questions when summoned before a congressional subcommittee. The indictment charged, in the language of 2 U.S.C. § 192, that defendant refused to answer questions which " 'were pertinent to the question then under inquiry' * * *." Such a charge was held to be legally insufficient because the indictment failed to identify the subject under inquiry at the time of defendant's refusal to answer.

*Russell*, supra, is not applicable. In this case, defendant was charged with violation of a specific statutory section. The indictment stated the common name of the offense, stated a specific date of the offense, and stated the offense occurred in McKinley County, New Mexico. The uncertainty of the offense charged in *Russell*, does not exist in this case. Rather, the indictment sufficiently informed defendant of what he must be prepared to meet. *Russell*, supra. The indictment did not deprive defendant of due process. See State v. Herrod, 84 N.M. 418, 504 P.2d 26 (Ct. App.1972).

Defendant also asserts the indictment failed to state the essential facts as required by § 41–23–5(d), N.M.S.A.1953 (2d Repl.Vol. 6, Supp.1973). The essential facts, allegedly missing, were the details of the charge. What is essential depends on that which is conveyed by other parts of the indictment. State v. Vigil, 85 N.M. 328, 512 P.2d 88 (Ct.App.1973). The indictment provided the date, common name and statutory section number of the offense. The indictment also identified witnesses upon whose testimony the indictment was based. These witnesses included named personnel at the "U. S. Public Health Service Hospital, Gallup, New Mexico."

Defendant does not assert what essential facts were missing. Accordingly, we cannot hold the indictment failed to allege essential facts. In addition, § 41–23–7(a) and (d), N.M.S.A.1953 (2d Repl.Vol. 6, Supp.1973) require a showing of prejudice due to a defect, error, or omission in an indictment. Defendant has not attempted to show any prejudice resulting from the manner in which the offense was charged. State v. Padilla, 86 N.M. 282, 523 P.2d 17 (Ct.App.1974).

The indictment charging criminal trespass was legally sufficient.

*Instructions on Required Intent*

Defendant asserts that the trial court failed to properly instruct the jury on the intent required for conviction on the four counts involving aggravated assault. The court did instruct the jury in the terms of the statutes. The State asserts that this was sufficient.

The intent required by § 40A–3–2(A), supra, is that of conscious wrongdoing. State v. Mascarenas, 86 N.M. 692, 526 P.2d 1285 (Ct.App.), decided September 11, 1974. Section 40A–22–21(A)(1), supra, is similar to § 40A–3–2(A), supra. Both define aggravated assault as "unlawfully assaulting or striking at * * * with a deadly weapon." Section 40A–3–2(A), supra; § 40A–22–21(A)(1), supra. The reasoning and conclusion of the Court in *Mascarenas,* supra, is equally applicable

to § 40A–22–21(A)(1), supra. Conscious wrongdoing is an essential element of § 40A–22–21(A)(1), supra.

If the statute sets forth the required intent, instructions in the language of the statute are sufficient. State v. Gonzales, 86 N.M. 556, 525 P.2d 916 (Ct.App. 1974). However, the language of § 40A–3–2(A), supra, was insufficient to inform the jury that conscious wrongdoing was a required element. State v. Mascarenas, supra. We have held that §§ 40A–22–21(A)(1) and 40A–3–2(A), supra, require the same intent. Thus, instructions in the language of § 40A–22–21(A)(1), supra, were insufficient to inform the jury of the intent required.

Because the jury was not instructed on the required criminal intent, the convictions for violations of §§ 40A–3–2(A) and 40A–22–21(A)(1), supra, are reversed. The criminal trespass conviction is affirmed. The cause is remanded for further proceedings consistent with this opinion.

It is so ordered.

LOPEZ, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent. The conviction of Mr. Cutnose should be reversed because the State of New Mexico lacked jurisdiction to indict and try this defendant.

The State's jurisdiction involves one issue of Indian-State relations never before decided—the meaning of a "dependent Indian community". This jurisdictional question is of paramount importance because it involves "general public interest" and the "fundamental rights of a party". Supreme Court Rule 11. N.M.S.A. § 21–12–11 (1974 Interim Supp.).

*(A) The Alleged Offenses Took Place in Navajo "Indian Country".*

*(1) Navajo "Indian Country" Defined*

"Indian Country" is defined, in 18 U.S. C.A. § 1151 (1966), as follows:

[T]he term "Indian country", * * * means (a) all land within the limits of

any Indian reservation under the jurisdiction of the United States government * * * (b) all *dependent Indian communities* within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished * * *. [Emphasis added.]

The Navajo Tribal Council adopted Resolution CMY–28–70, codified into the Navajo Tribal Code as 7 N.T.C. § 134 (1970), on May 7, 1970. According to this section of the Navajo Tribal Code,

the term Navajo "Indian Country" shall be defined as and shall include * * * all land included within the exterior boundaries of the Eastern Navajo Agency, [that is] land management districts 15, 16, and 19. * * *

The Preamble to Resolution CMY–28–70 recognizes that, "[t]he population of the Eastern Agency area is predominately Navajo, except for the city of Gallup. * * *" 7 N.T.C. § 134 (History). Accordingly, the Resolution, as codified into Navajo law, excludes Gallup from Navajo "Indian Country" with the following provision:

(d) All predominately non-Indian communities within the exterior boundaries of Navajo "Indian Country" are excepted from and not included within the definition of Navajo "Indian Country," in compliance with 18 U.S.C.A. § 1151. 7 N.T.C. § 134(d).

*(2) This Court Can Take Judicial Notice of Geographical Facts.*

The Majority Opinion states that defendant's claim has no factual support in the trial record that the locus of the alleged offenses (the Navajo Indian Medical Center) is in Navajo "Indian Country". However, this Court can take judicial notice of geographical facts. Empire Fire and Marine Insurance Co. v. Lee, 86 N.M. 739, 527 P.2d 502 (Ct.App.), decided October 9, 1974; Carlsbad Broadcasting Corp.

v. Bureau of Revenue, 51 N.M. 360, 184 P.2d 434 (1947); Hutcheson v. Atherton, 44 N.M. 144, 99 P.2d 462 (1940).

In other jurisdictions, the doctrine of judicial notice is available to appellate courts, as well as trial courts. Granville-Smith v. Granville-Smith, 349 U.S. 1, 75 S.Ct. 553, 99 L.Ed. 773 (1955); Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 69 S.Ct. 606, 93 L.Ed. 741 (1949); Atchison, Topeka and Santa Fe Ry. Co. v. United States, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273 (1932); United States v. Casson, 140 U.S.App.D.C. 141, 434 F.2d 415 (1970); People v. Melchor, 237 Cal.App.2d 685, 47 Cal.Rptr. 235 (Ct.App. 1st Dist. 1965); Johnson v. State, 8 Md.App. 28, 257 A.2d 756 (1969); Warren v. State, 162 Neb. 623, 76 N.W.2d 728 (1956); People v. Sowle, 68 Misc.2d 569, 327 N.Y.S.2d 510 (Fulton Cnty Ct.1971); Frazier v. State, 267 P.2d 155 (Okl.Cr.App.1953); State v. Marasco, 81 Utah 325, 17 P.2d 919 (1933).

Furthermore, this Court can take judicial notice of geographical facts when necessary to consider a jurisdictional question when the issue is one that involves "general public interest", and the "fundamental rights of a party". N.M.S.A. § 21–12–11 (Rule 11) (1974 Interim Supp.). See, also, § 20–4–201(b), N.M.S.A.1953 (Repl.Vol. 4, 1973 Supp.); § 21–1–1(44)(d)(8), N.M.S.A.1953 (Repl.Vol. 4, 1970 Supp.).

*(3) The Locus of the Alleged Offenses Was in Navajo "Indian Country."*

The locus of the alleged offenses is the Gallup Indian Medical Center. I take judicial notice of the following geographical facts: 1) the boundaries of the Eastern Navajo Agency; and 2) the city limits of Gallup, New Mexico.

The Gallup Indian Medical Center, located in the environs of Gallup, New Mexico, is within the boundaries of the Eastern Navajo Agency. See map, Appendix II to this Opinion, infra. And the Gallup Indian Medical Center is located *outside* the Gallup city limits. In the vicinity of the Medical Center, the southern boundary of the city limits extends from east to west

along the southern edge of Nizhoni Boulevard, while the Indian Medical Center is located south of Nizhoni Boulevard, *just outside the city limits*. Accordingly, although the jurisdiction of the Gallup City Police extends along Nizhoni Boulevard, law enforcement on the Medical Center grounds is the responsibility of the McKinley County Sheriff's Office, not of the city police. In the instant case, an officer from the Sheriff's Office made the arrest.

Since the alleged offenses took place inside the Eastern Navajo Agency but outside the city of Gallup, they took place in Navajo "Indian Country". 7 N.T.C. § 134.

*(B) The Characterization of The Eastern Navajo Agency as "Indian Country" by 7 N.T.C. § 134 Is Authoritative.*

The Navajo Tribe has delegated its legislative power to the Navajo Tribal Council, whose enactments are codified into the Navajo Tribal Code. Only the "clearly expressed constraint" of the federal government restricts that legislative power. Navajo Tribe of Indians v. Holyan, Docket No. A–CR–15–72, at 2 (Navajo Court of Appeals, August 22, 1973) (See Appendix I, infra). The reason for this is that the Navajo Tribe, like other Indian tribes:

> began its relationship with the Federal Government as a sovereign or quasi-sovereign government, recognized as such by treaty and in legislation. * * * The statutes of Congress * * * must be examined carefully in many instances to determine the limitations of tribal sovereignty. * * * *What is not expressly limited often remains within the domain of tribal sovereignty simply because State jurisdiction is federally excluded and governmental authority must be found somewhere.*
>
> * * * * * *
>
> *The acts of Congress which appear to limit the powers of an Indian tribe are not to be unduly extended by doubtful inference.* United States Department of

the Interior, Federal Indian Law 395–96 (1958) [Emphasis added.].

See, also, In re Mayfield, Petitioner, 141 U.S. 107, 115–116, 11 S.Ct. 939, 941, 35 L. Ed. 635, 638 (1891).

> While it is so that Congress retains paramount authority to legislate for and enforce its laws on all the tribes in certain respects, *only in special instances has it done so. . . .*
>
> * * * [The Secretary of the Interior's] approval of the tribal action [in this case] was entirely in keeping with that abstinence from federal intervention in the internal affairs of an Indian tribe which the law clearly requires. *The Secretary had simply recognized the valid governing authority of the Tribal Council.* Oliver v. Udall, 113 U.S.App. D.C. 212, 306 F.2d 819, 822–823 (1962). [Emphasis added; footnotes omitted.]

The Supreme Court has stated that, "absent governing acts of Congress," state action must not "infringe[d] on the right of reservation Indians to make their own laws and be ruled by them." Williams v. Lee, 358 U.S. 217, 220, 79 S.Ct. 269, 270–271, 3 L.Ed.2d 251 (1958).

The New Mexico Supreme Court has, likewise, held that the State cannot interfere with an Indian tribe's right of self-government or impair a right granted, reserved or preempted by Congress. Sangre de Cristo Dev. Corp., Inc. v. City of Santa Fe, 84 N.M. 343, 503 P.2d 323 (1972); cf. Norvell v. Sangre de Cristo Dev. Corp., Inc., 372 F.Supp. 348 (D.C.N. M.1974).

Absent clear restraint by or conflict with federal law, state and federal authorities must grant comity to Navajo Tribal Council legislation (codified as the Navajo Tribal Code).

Does 7 N.T.C. § 134, which sets the boundaries of Navajo "Indian Country", conflict with federal law? A search of the law reveals that it does not.

The Tenth Circuit, in Tooisgah v. United States, 186 F.2d 93 (1950), stated that

the term, "Indian Country", has a "broad and flexible definition." Id., at 99.

Navajo Tribal Council Resolution CMY–28–70 is the source of 7 N.T.C. § 134. By reading the Preamble to that Resolution alongside 18 U.S.C. § 1151, the Resolution follows the criteria of the federal statute when it classifies the Eastern Navajo Agency as "Indian Country". The Resolution recognizes that 18 U.S.C.A. § 1151 defines three types of geographic areas which can be called "Indian Country", the second of which is "dependent Indian communities". And it then states that the Eastern Navajo Agency is a "dependent Indian Community." 7 N.T.C. § 134 (History: Preamble §§ 6, 10).

The Tenth Circuit Court of Appeals, in a case arising out of New Mexico, has stated the criteria to be used to decide whether an area is a "dependent Indian community". These are: "the nature of the area in question, the relationship of the inhabitants of the area to Indian Tribes and to the federal government, and the established practice of government agencies toward the area." United States v. Martine, 442 F.2d 1022, 1023 (1971). *These very criteria* are followed by the Tribal Council Resolution in stating its reasons *why* the Eastern Navajo Agency is a "dependent Indian community":

* * * The Bureau of Indian Affairs, by virtue of the establishment of the Eastern Navajo Agency and by virtue of the boundaries established for the Agency districts, has defined the area within the exterior boundaries of the Eastern Agency Districts as a "dependent Indian Community", and

* * * Over sixty percent of the land within the Eastern Agency exterior boundaries is owned either by [sic] the Navajo Tribe or held in trust for Navajo Indian allottees, and

* * * The population of the Eastern Agency area is predominately Navajo, except for the city of Gallup, New Mex-

ico. * * * 7 N.T.C. § 134 (History: Preamble §§ 7, 8, 9)

The characterization of the Eastern Navajo Agency as "Indian Country", in *7 N.T.C. § 134*, closely conforms to federal law.

Lacking substantive conflict with federal law, the only other possible restraint on the legality and binding force of 7 N.T.C. § 134 arises from 25 C.F.R. § 11.1(e). This section indicates that Interior Department approval is required.

Nothing in this section shall prevent the adoption by the tribal council of ordinances applicable to the individual tribe, and after such ordinances have been approved by the Secretary of the Interior they shall be controlling. * * *

There is no record of Department of the Interior action on this Resolution. However, the Department follows the rule that *approval of tribal council resolutions is exercised by the absence of explicit disapproval.* Memorandum, United States Department of the Interior, Subject: Approval of Tribal Ordinances, June 8, 1959 (appended to *Holyan*; see Appendix, infra.). See, also, *Holyan*, at 3. This rule reflects the federal government's policy of abstaining from intervention in the internal affairs of Indian tribes to the greatest extent possible. Williams v. Lee, supra, 358 U.S. at 221–222, 79 S.Ct. 269; Oliver v. Udall, supra, 306 F.2d at 822–823.

7 N.T.C. § 134 has never been acted on by the Department of the Interior. Hence, by Departmental policy, it has been approved. In any case, 25 C.F.R. § 11.1 applies only to Indian reservations on which Courts of Indian Offenses are maintained. 25 C.F.R. § 25.1(a). Since there are no such courts on the Navajo Reservation, the regulation is not applicable. *Holyan*, supra, at 3 (See Appendix).

One must conclude that Section 134 of the Navajo Tribal Code speaks with authority when it includes the Eastern Navajo Agency within Navajo "Indian Country".

*(C) With Certain Exceptions, Not Applicable Here, The State of New Mexico Does Not Have Criminal Jurisdiction in "Indian Country" Within New Mexico.*

The Ten Major Crimes Act, 18 U.S.C.A. § 1153(1968) provides that an Indian who commits one of ten enumerated offenses in "Indian Country" falls "within the exclusive jurisdiction of the United States." The Indian defendant in this case was convicted of two counts of aggravated assault, which is defined as "unlawfully assaulting or striking at another with a deadly weapon." Section 40A–3–2, N.M.S.A.1953 (Vol. 6, 2d Repl.1970). As the Majority Opinion seems to recognize, without more, 18 U.S.C.A. § 1153 prohibits State jurisdiction on this charge, since two of the offenses named in § 1153 are "assault with intent to kill", and "assault with a dangerous weapon". The State lacked jurisdiction to try defendant for aggravated assault. Jurisdiction rests solely in the federal courts. DeMarrias v. United States, 487 F.2d 19 (8th Cir.), cert. denied, 415 U.S. 980, 94 S.Ct. 1570, 39 L.Ed.2d 877 (1974); United States v. Monte, 3 N.M. Gild. 173, 3 N.M. John 126, 3 P. 45 (1884).

Defendant was also charged with criminal trespass, counter to § 40A–14–1, N.M. S.A.1953 (Vol. 6, 2d Repl.1972). As with aggravated assault, the United States Code prohibits State jurisdiction over this offense, within "Indian Country". 18 U.S. C.A. § 1152 provides:

> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States * * * shall extend to the Indian country.

> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the

tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

This statute expresses the clear Congressional intent that a) except where the law expressly provides otherwise, and b) except for the enumerated situations in which the Indian tribe has jurisdiction, jurisdiction over offenses committed within "Indian Country" resides solely with the federal government.

Furthermore, in 1968, Congress passed into law 25 U.S.C.A. § 1321 (1974 Supp.), which *provides an explicit means* by which a State may assume criminal jurisdiction in "Indian Country":

> (a) The consent of the United States is hereby given to any State not having jurisdiction over criminal offenses committed by or against Indians in the areas of Indian Country situated within such State to assume, *with the consent of the Indian tribe occupying the particular Indian country or part thereof which could be affected by such assumption,* such measure of jurisdiction over any or all of such offenses committed within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over any such offense committed elsewhere within the State, and the criminal laws of such State shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State. [Emphasis added.]

Reading 18 U.S.C.A. §§ 1151, 1152, 1153 and 25 U.S.C.A. § 1321 together, the meaning is inescapable that a State does not have criminal jurisdiction in Indian Country within its borders unless it explicitly assumes such jurisdiction, with the consent of the Indian tribe. "[W]e cannot believe that Congress would have required the consent of the Indians affected * * * if the States were free to accomplish the same goal unilaterally * * *." Mc-

Clanahan ˙v. Arizona State Tax Commission, 411 U.S. 164, 178, 93 S.Ct. 1257, 1265, 36 L.Ed.2d 129, 139 (1973).

The Navajo Tribe has not given, nor has the State acted to obtain, the consent of the Tribe to State criminal jurisdiction over the Eastern Navajo Agency. The giving of such consent would seem to go counter to the intent of 7 N.T.C. § 134. See, also, *Holyan*.

State and federal courts have recognized the Congressional intent that either the federal government or the Indian tribe should exercise criminal jurisdiction in "Indian Country", but that state governments should *not* have such jurisdiction. The fact situations in most of the cases discussed or cited, infra, involve incidents on Indian reservations. Nonetheless, principles of law that pertain to "Indian Country" apply to "dependent Indian communities" as well as reservations. 18 U.S.C.A. § 1151.

### (1) Federal Courts

In Williams v. Lee, supra, the Supreme Court stated:

Today the Navajo Courts of Indian Offenses exercise broad criminal and civil jurisdiction which covers suits by outsiders against Indian defendants. No Federal Act has given state courts jurisdiction over such controversies.

\* \* \* \* \* \*

There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves. 358 U.S. at 222–223, 79 S.Ct. at 272.

In In Re Carmen's Petition, 165 F.Supp. 942 (N.D.Cal.1958), the court rejected the contention that the existence of federal jurisdiction in "Indian Country" does not exclude state jurisdiction:

The language of the [Ten Major Crimes] Act [18 U.S.C.A. § 1153] \* \* \* clearly contemplates that Indi-

an offenders shall be tried exclusively in the federal courts. *There are many cases that so hold, and none which hold to the contrary.* [Cases cited, Fn. 10] Id., at 948. [Emphasis added.]

The Ninth Circuit upheld this decision by stating simply, "The exhaustive opinion of Judge Goodman leaves nothing to be added, and his judgment is affirmed." Dickson v. Carmen, 270 F.2d 809, cert. denied, 355 U.S. 924, 78 S.Ct. 367, 2 L.Ed.2d 354 (1958).

Moreover, "[t]he policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation's history." McClanahan v. Arizona State Tax Commission, supra, 411 U.S. at 168, 93 S.Ct. at 1260 (quoting from Rice v. Olson, 324 U.S. 786, 789, 65 S.Ct. 989, 991, 89 L.Ed. 1367, 1370 (1944). See Williams v. Lee, supra; Williams v. United States, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946); United States v. Sandoval, 231 U.S. 28, 34 S.Ct. 1, 58 L.Ed. 107 (1913); Worcester v. Georgia, 6 Pet. 515, 8 L.Ed. 483 (1832). The language of 18 U.S.C.A. § 1151(b) by which "dependent Indian communities" is included in "Indian Country" is taken from *Sandoval*, supra, 231 U.S. at 45–46, 34 S.Ct. 1.

### (2) New Mexico

In Your Food Stores, Inc. (NSL) v. Village of Espanola, 68 N.M. 327, 361 P.2d 950 (1961), the Supreme Court stated, "The early policy of leaving Indians free from state jurisdiction and control is deeply rooted in our nation's history. [citing *Rice*, supra]." 68 N.M. at 330, 361 P.2d at 952. The Court added that the State has no jurisdiction "over the Indians or Indian lands, except where such jurisdiction has been specifically granted by Act of Congress, or sanctioned by decisions of the Supreme Court of the United States." Id. In State v. Warner, 71 N.M. 418, 379 P.2d 66 (1963), the Court followed Williams v. Lee, supra, and *Your Food Stores*, supra, and added that the State does have criminal jurisdiction over offenses committed on an Indian Reservation *by a non-Indian*

*against a non-Indian victim and which do not involve Indian property.* See, also, Batchelor v. Charley, 74 N.M. 717, 398 P. 2d 49 (1965); Valdez v. Johnson, 68 N.M. 476, 362 P.2d 1004 (1961); State v. Begay, 63 N.M. 409, 320 P.2d 1017 (1958) (overruled by *Warner,* supra, on other grounds).

### (3) Leading Cases in Other States

To fortify the lack of criminal jurisdiction by New Mexico, we cite leading cases from other states. Morgan v. Colorado River Indian Tribe, 7 Ariz.App. 92, 436 P. 2d 484 (Ct.App.), vacated on other grounds, 103 Ariz. 425, 443 P.2d 421 (1968); Application of Denetclaw, 83 Ariz. 299, 320 P.2d 697 (1958); Boyer v. Shoshone-Bannock Indian Tribes, 92 Idaho 257, 441 P.2d 167 (1968); State v. Lussier, 269 Minn. 176, 130 N.W.2d 484 (1964); State v. District Court, 128 Mont. 37, 270 P.2d 396 (1954).

The wealth of authority on this question leads inevitably to the conclusion that criminal jurisdiction by the State of New Mexico is excluded from "Indian Country", with a possible exception in the extreme case that involves a non-Indian defendant, a non-Indian victim, and non-Indian property.

### (D) Whether Defendant Is Or Is Not a Member Of The Navajo Tribe is Irrelevant.

The Majority Opinion finds a deficiency in the fact that defendant bases his jurisdictional claim on the Navajo Tribal Code, because the record indicates that defendant is an Indian. It is silent as to whether he is a *Navajo* Indian. However, the relevant provisions of the Navajo Tribal Code apply to this case whether defendant is a Navajo or a member of another Indian tribe. The Navajo Tribal Code relates to the jurisdictional issue here because it has set the boundaries of Navajo "Indian Country" in such a way that the Indian Medical Center is located within "Indian Country". The authority of the Tribal Code to define the character of the territory in question derives from the status of the Navajo Tribe vis-a-vis the federal government and the states. It does not turn on the tribal affiliation of the particular defendant in this case. The State's lack of jurisdiction *in this case* follows from its lack of jurisdiction in *"Indian Country"*. This lack of jurisdiction holds in *all criminal cases* in "Indian Country", except possibly where neither defendant nor victim is an "Indian" (regardless of tribe), and the incident does not involve Indian property. See State v. Youpee, 103 Mont. 86, 61 P.2d 832 (1936), in which the court stated that the jurisdictional issue regarding an Indian accused of a crime "turns upon the place of the crime." 61 P.2d at 834.

### (E) Conclusion

In summary, the law as it relates to the jurisdictional question in this case is as follows:

1) This Court can take judicial notice of geographical facts to fix the location of the Gallup Indian Medical Center with respect to the boundaries of Navajo "Indian Country".

2) The Navajo Tribal Code defines the boundaries of Navajo "Indian Country" in such a way that the Medical Center which is the locus of the alleged offenses is in a "dependent Indian community" and, hence, in "Indian Country".

3) The Navajo Tribal Code's characterization of the Eastern Navajo Agency as "Indian Country" closely follows the guidelines for defining "Indian Country", in 18 U.S.C.A. § 1151, and for defining a "dependent Indian community", in United States v. Martine, supra. That characterization is authoritative, by reference to § 1151 and *Martine,* as well as pronouncements by the courts on the authority of tribal legislative power.

4) Whether defendant is a Navajo Indian or a member of another Indian tribe is irrelevant to the question of the State's jurisdiction.

5) Since defendant's alleged offenses took place in Navajo "Indian Country", the State of New Mexico did not have jurisdiction to try him for those offenses.

The conviction below should be reversed.

## APPENDIX I
### THE NAVAJO TRIBE OF INDIANS
Plaintiff

v.

### IDA HOLYAN
Defendant

Decided August 22, 1973

Headnotes

(1) Since the Navajo Nation is a subordinate sovereignty, its powers of self government are subject to treaties and to express legislation of Congress representing the dominant sovereignty.

(2) The Navajo Tribal Council may not abdicate its powers of self government in the absence of a treaty or the clearly expressed constraint of the dominant sovereignty.

(3) A determination by the Navajo Tribal Council that Eastern Navajo Agency Land Management Districts 15, 16 and 19, with the exception of Gallup, New Mexico, is a dependent Indian community and therefore "Indian Country" was supported by the facts and compiled with the standards enunciated by the Federal 10th Circuit Court of Appeals in United States v. Martine, 442 F.2d 1022 (1971).

(4) The United States Congress has imposed no territorial restriction on the jurisdiction of Indian Courts when an offense has been committed by one Indian against the person or property of another Indian. 18 U.S.C.A. § 1152.

## OPINION

KIRK, Chief Justice

This case arose from an alleged altercation in the parking lot of the Yah Ta Hey Trading Post at the junction of Highways 666 and 264. The defendant is charged with assault, assault and battery, and malicious mischief against an Indian. An interlocutory appeal on the question of jurisdiction was allowed.

The sole question presented and decided by this case is whether or not the Courts of the Navajo Nation have jurisdiction in a criminal case arising in the Checkerboard area, over an Indian defendant, when the complaining witness is also an Indian.

### I

The Navajo Tribal Council adopted Resolution CMY–28–70, codified 7 NTC § 134, on May 7, 1970. This resolution extended the jurisdiction of the Navajo Courts to Navajo "Indian Country" and defined Navajo Indian Country to include the Eastern Navajo Agency, Land Management Districts 15, 16 and 19 with the exception of Gallup.

The validity of Resolution CMY–28–70 and amended 7 NTC § 134 has been questioned by the defendant-appellant on the grounds that the resolution has not been approved by the Secretary of the Interior as provided by 7 NTC § 1(e) and 17 NTC § 1.

Since the Navajo Nation is a subordinate sovereignty, its powers of self government are subject to treaties and to the express legislation of Congress representing the dominant sovereignty. Therefore, the Congress could validly require the approval of the Secretary of the Interior before any Tribal resolution becomes effective. However, it does not follow that the Navajo Tribal Council may, on its own initiative, abdicate its legislative function to any other authority or body. A weaker power does not surrender its independence and its right to self government by associating itself with a stronger power and accepting its protection. Worcester v. Georgia, 6 Pet. 515, 31 U.S. 515, 8 L.Ed. 483 (1832), Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), Iron Crow v. Oglala Sioux Tribe of the Pine Ridge Reservation, 231 F.2d 89–94 (8th Cir. 1956).

The sovereign power of the Navajo Nation has been delegated to the Council by the members of the Navajo Nation; the Council may not abdicate its powers of self government in the absence of a treaty or the clearly expressed constraint of the dominant sovereignty.

This is reflected by the Court of Appeals for the District of Columbia Circuit in the case of Oliver v. Udall:

> While it is so that Congress retains paramount authority to legislate for and enforce its laws on all the tribes in certain respects, only in special instances has it done so. Otherwise, as the Supreme Court so recently stated:

> "The cases in this Court have consistently guarded the authority of Indian governments over their reservations. Congress recognized this authority in the Navajos in the Treaty of 1868, and has done so ever since. If this power is to be taken away from them, it is for Congress to do it." [Williams v. Lee, 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959)].

> \* \* \* \* \* \*

It is our view that the Secretary's approval of the tribal action in 1959 was entirely in keeping with that abstinence from federal intervention in the internal affairs of an Indian tribe which the law clearly requires. The Secretary had simply recognized the valid governing authority of the Tribal Council, [Williams v. Lee, 221, 222, 79 S.Ct. 269, Treaty of 1868. 306 F.2d 819, 822, 823. (CADC 1962).]

Although the defendant-appellant relies on 25 CFR § 11.1, et seq. which requires Tribal ordinances to be approved by the Secretary of the Interior, the provisions of 25 CFR § 11 et seq. are only applicable to those reservations on which Courts of Indian Offenses are maintained. 25 CFR § 11.1(a).

It has been repeated by this Court (Navajo Tribe of Indians v. Orlando Helicopter Airways. A–CV–05–72, Jan. 12, 1972, and by Federal Courts (Oliver v. Udall, supra) that 25 CFR § 11, et seq. has no applicability to the Navajo Nation. Although the Law and Order Code was substantially adopted verbatim, it takes its effect as *tribal law* and not as the *law* of the United States imposed on the Tribe. Not only is the Navajo Tribal Council free to amend, replace or abolish it at any time without the consent or approval of the Secretary of the Interior, but any attempt to delegate such a power is completely void. The approval and signature of the Secretary or his delegated representative is a meaningless formality. This is reflected by the language of Oliver v. Udall, and was apparently acknowledged by the opinion of the Assistant Solicitor, Legal Activities, to the Commissioner of Indian Affairs.[1]

---

1. United States Department of the Interior
Office of the Solicitor
Washington, D. C.

Sol...Indians
June 8, 1959

MEMORANDUM

To: Commissioner of Indian Affairs
From: Assistant Solicitor, Indian Legal Activities
Subject: Approval of Tribal Ordinances

With respect to the Navajo Tribal resolutions recently enacted involving tribal labor policy, I am aware of nothing in the law or regulations concerning Indian affairs which requires you to approve or disapprove such resolutions.

It has been emphasized that "Indians are not wards of the Executive officers, but wards of the United States." (Ex Parte Bi-a-lil-le, 12 Ariz. 150, 100 P. 450 (1900): see Fed. Indian Law, 1953, p. 563). Congress has not required the Secretary to approve tribal ordinances, nor has the President or the Secretary, under authority delegated by Section 2 of 25 U.S.C., seen fit to issue regulations referring to Secretarial consideration or approval of tribal ordinances. Many tribal constitutions adopted pursuant to Section 16 of the Indian Reorganization

## II

The validity of Resolution CMY–28–70, 7 NTC § 134 depends not only whether or not the requirement of approval by the Secretary of the Interior is a valid prerequisite to the validity of Tribal resolutions, but also on whether or not such an assumption of judicial power by the Navajo Nation is precluded by the Federal statutes.

18 U.S.C.A. § 1152 establishes the authority of an Indian tribe to punish any Indian committing any offense in Indian Country. The term "Indian Country" is defined by 18 U.S.C.A. § 1151. Therefore, if the Yah Ta Hey junction, the site of the incident, is within one of the statutory definitions of "Indian Country" then the grant of jurisdiction by the Navajo Tribal Council is valid.

Section 1151(b) describes *"all dependent Indian communities* within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state * * *"* as within Indian country.

A determination that a grant of jurisdiction to the Navajo Courts by the Tribal Council is valid under these provisions requires a definition of "dependent Indian community."

The Tenth Circuit Court of Appeals considered the definition of "dependent Indian community" in United States v. Martine, 442 F.2d 1022 (10th Cir. 1971). The Martine case involved the prosecution of an Indian for involuntary manslaughter. The Court acknowledged that federal jurisdiction under the Major Crimes Act, 18 U.S.C.A. § 1153 rested on the claim that the Ramah area of the "Checkerboard" area is a "dependent Indian community." Although the incident involved in the *Martine* case took place on land which had been purchased by the Navajo Tribe from a corporate owner, the Court considered that this was only one of the several relevant factors which are to be considered in making a determination that the area was a "dependent Indian community" and thus within the definition of "Indian Country." [2]

This expansive interpretation of "Indian Country" is justified by legislative history

Act (25 U.S.C. 476, 48 Stat. 987), contain provisions implying Secretarial consideration of tribal ordinances, at least, in special cases. These provisions were inserted by the Tribe with the consent of the Secretary. This is within his authority, but it is not a Congressional mandate. The Navajos have no such written constitution.

The Secretary has a responsibility to encourage and assist Indian tribes under federal guardianship to carry out their tribal governmental functions and to conduct their tribal business in a legal and efficient manner. This task is obviously limited, however, by personnel and funds, as well as by the Congressional policy to encourage the Indians to assume continuously increasing responsibility and to develop self reliance.

In addition, certain resolutions may concern tribal action which by statute require Secretarial approval, such as encumbrances of tribal property. Here the Secretary must act because the statute requires approval of the specific act. The resolutions attached are not of this nature.

Signed **FRANKLIN C. SALISBURY**
 Assistant Solicitor
 Indian Legal Activities

---

**2.** United States v. Martine, 442 F.2d 1022, 1023–1024 (10th Cir. 1971)

The trial court received evidence as to the nature of the area in question, the relationship of the inhabitants of the area to Indian tribes and to the federal government, and the established practice of government agencies towards the area. The testimony of enforcement officers and BIA officials supports the trial court's holding that the site of this incident was Indian Country.

Appellant urges that such a holding implies that whenever a group of Indians is found, e. g., in Los Angeles, there is a dependent

as well as by case authority. The Tenth Circuit Court pointed this out in Tooisgah v. United States, 186 F.2d 93 (10th Cir. 1950) which construed the prior law relating to federal jurisdiction over the Major Crimes. The statute in effect at the time of the homicide for which Tooisgah was convicted provided for federal jurisdiction over homicides "within the limits of any * * * reservation."

> "* * * we are convinced that Congress did not intend to use the terms 'Indian Country' and 'within the limits of any . . . reservation' synonymously. * * * When the legislative scheme is considered in its historical setting, we think it of controlling significance that instead of employing the familiar term 'Indian Country', with its broad and flexible definition to delineate federal jurisdiction, Congress chose language carefully designed to recognize the sovereign jurisdiction of a state * * * In the reenactment of 548 as Section 1153, Title 18 U.S.C.A., Congress substituted 'Indian Country' for 'on (or) within any Indian reservation', thus conferring federal jurisdiction over the enumerated crimes when committed in Indian country as defined in Section 1151, of the Revised Criminal Code." 186 F.2d at 99.

The Tribal Council, in passing Resolution CMY–28–70, considered and stated its determination as to the nature of the area, the relationship of the inhabitants of the area to Indian tribes and to the federal government, and the established practice of the government agencies toward the area. The factors considered and the facts cited, such as the fact that over 60% of the land in the Eastern Navajo Nation boundaries is either owned by the Navajo Tribe or held in trust for Navajo Indian allottees, that the population of the Eastern Navajo Agency is predominantly Navajo, that the Navajo Tribe has for many years accepted

responsibility for law enforcement in the Eastern Navajo Agency and has paid the full costs thereof without assistance from the State of New Mexico, are sufficient to sustain the determination that the Eastern Navajo Agency Land Management Districts 15, 16 and 19 with the exception of Gallup, New Mexico, are Navajo "Indian Country." United States v. Martine, *supra*, 442 F.2d at 1023–1024.

An alternative basis on which the jurisdiction of the Courts of the Navajo Nation over Holyan may be sustained in 18 U.S.C.A. § 1152:

> *"This section shall not extend to offenses committed by one Indian against the person or property of another Indian,* nor to any Indian committing any offense in Indian country who has been punished by the local law of the tribe * * *"* (emphasis supplied)

The clauses are clearly disjunctive. So far as the Congress is concerned the Indian Courts may assert jurisdiction over any offense which involves an Indian complainant and an Indian defendant regardless of where the cause arose. The only limitations on such worldwide jurisdiction are imposed by the Due Process Clause incorporated into the 1968 Indian Civil Rights Act, the statutory jurisdictional limitations set forth by the Navajo Tribal Code Title 7, and Federal statutes withdrawing tribal jurisdiction in clearly specified circumstances.

Therefore, even if it were determined that Yah Ta Hey Trading Post was not within "Indian Country"—an independent basis for jurisdiction exists.

This case is remanded for further proceedings not inconsistent with this opinion.

YELLOWHAIR, Judge and BENNALLEY, Judge concur.

See Appendix on next page.

---

Indian community. This does not follow. The test we are applying here is not so simple. Only after considering all of the various factors we have noted, as well as any other relevant factors, can the trial court determine the status of a particular area. The mere presence of a group of Indians in a particular area would undoubtedly not suffice.

NAVAJO NATION, U.S.A.

PREPARED BY
OFFICE of NAVAJO LAND ADMINISTRATION
THE NAVAJO TRIBE—WINDOW ROCK, ARIZONA—86515
W.SHERMAN—1974—FEBRUARY

322

